# HOOPER *v.* CALIFORNIA.

## ERROR TO THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, STATE OF CALIFORNIA.

No. 7. Argued October 10, 1894. — Decided January 7, 1895.

Section 439 of the Penal Code of California, making it a misdemeanor for a person in that State to procure insurance for a resident in the State from an insurance company not incorporated under its laws and which had not filed the bond required by the laws of the State relative to insurance, is not a regulation of commerce, and does not conflict with the Constitution of the United States, when enforced against the agent of a New York firm in California who, through his principals and by telegram, procured for a resident in California applying for it there, marine insurance on an ocean steamer, from an insurance company incorporated under the laws of Massachusetts, and which had not filed the bond required by the laws of California.

SECTION 623 of the Political Code of the State of California provides as follows :

" The [insurance] commissioner must require every company, association, or individual not incorporated under the laws of this State and proposing to transact insurance business by agent or agents in this State, before commencing such business to file in his office a bond to be signed by the person or firm, officer or agent, as principal, with two sureties to be approved by the commissioner, in the penal sum of two thousand dollars for each insurance company, association, firm or individual for whose account it is proposed to collect premiums of insurance in this State ; the conditions of such bond to be as follows :

"1. That the person or firm, agent or officer named therein, acting on behalf of the company, association, firm or individual, named therein, will pay to the treasurer of the county or city and county in which the principal office of the agency is located, such sum per quarter, quarterly in advance, for a license to transact an insurance business or such other license

as may be imposed by law so long as the agency remains in the hands of the person or firm, agent or officer named as principal in the bond;

"2. That the person or firm, officer or agent will pay to the State all stamp or other duties on the gross amounts insured by them, in the manner and at the time prescribed by law, inclusive of renewals on existing policies;

"3. That the person, firm, agent or corporation named therein will conform to all provisions of the revenue or other laws made to govern them."

Section 439 of the Penal Code of California is as follows:

"Every person who in this State procures or agrees to procure any insurance for a resident of this State from any insurance company not incorporated under the laws of this State, unless such company or its agent has filed the bond required by the laws of this State relative to insurance, is guilty of a misdemeanor."

On the 29th day of September, 1888, the plaintiff in error was charged before a police court of the city and county of San Francisco with having, on the first day of April, 1888, "in the city and county of San Francisco," committed the misdemeanor of procuring insurance on account of foreign companies that have not complied with the laws of this State; with having "then and there procured for a resident of this State insurance from an insurance company not incorporated under the laws of this State, to wit, China Mutual Insurance Company of Boston, said company or its agents not then or there having filed the bond required by the laws of this State relative to insurance." A jury having been waived, the case was tried by the court, and the defendant having been found guilty was sentenced to pay a fine of $5, and, in default thereof, to be imprisoned in the city prison for twenty-four hours. Motions in arrest and for a new trial were made on several grounds, among which it is necessary only to state the following:

"Second. For that the statute, to wit, sec. 439 of the Penal Code of the State of California, amounts to and is a regulation of commerce between the several States and foreign

nations, and is therefore in violation of paragraph 3, sec. 8, of article 1 of the Constitution of the United States.

" Third. For that sec. 439 of the Penal Code of the State of California is in violation of the constitutional right of the defendant to transact any business.in the State of California which is not opposed to the good morals or health of the community.

" Fourth. That the said statute is not a police regulation.

" Fifth. For that said statute is·in violation of the Fourteenth Amendment."

The motions having been overruled, the cause was taken by appeal to the Superior Court of the city and county of San Francisco, the highest court to which an appeal was permissible under the constitution and laws of the State of California.

The facts were stated as follows :

" That the firm of·Johnson & Higgins are average adjusters and insurance brokers, residing and having their principal place of business in the city of New York, State of New York.

" That as insurance brokers they procure for other persons, of whatever State resident, and on the request of such persons, insurance on ships and vessels, cargoes and freights, from insurance companies not incorporated under the laws of the State of California, or doing business therein as provided by the laws of said State.

" That they receive from said companies the marine policies issued by said companies so insuring said ships or vessels and deliver them to the party or parties for whom they have procured the same.

" That the said firm of Johnson & Higgins at all the times herein mentioned had a place of business in the city and county of San Francisco, State of California, and that the defendant had at all the times herein mentioned charge of said business as the employé and agent of said Johnson & Higgins, and not otherwise.

".That on the 13th day of March, 1888, C. W. Mott, a resident of the State of California, inquired of said defendant

if he, the said defendant, as the agent of Johnson & Higgins, could procure the said Johnson & Higgins to place a certain amount of insurance on the steamer Alliance of San Francisco, at a certain named rate of premium ; to which said defendant replied he would see what could be done in respect to the same.

"That thereupon the said defendant informed Johnson & Higgins of the inquiry of said Mott and requested them to advise him, the said defendant, of what, if anything, they had done or could do in the premises; that in compliance with the said request of the said defendant, said Johnson & Higgins telegraphed to said defendant as follows:

"' Alliance, four thousand dollars, done in American form,' but did not advise said defendant of the name of the company in which said insurance had been placed.

"The contents of the telegram above named were communicated by the defendant to said Mott. In April, 1888, said firm of Johnson & Higgins forwarded to the said defendant the policy of the 'China Mutual Insurance Company,' insuring four thousand dollars on said steamer Alliance.

"Said insurance company not then and there being a company incorporated under the laws of the State of California, and not then and there having by itself or its agent filed the bond required by the laws of the said State of California relating to insurance, this policy was delivered by the defendant to said Mott, and thereupon said Mott paid to the said defendant, as agent of Johnson & Higgins, the premium for said insurance. This premium was deposited by the defendant in a bank in San Francisco to the credit of Johnson & Higgins, and Johnson & Higgins were duly advised by him that said premium had been collected and the amount deposited in the bank to their credit.

"All the said verbal acts by said Mott and also of said defendant, and all acts of defendant as agent in said procuring, were done in the city and county of San Francisco, State of California."

On the foregoing statement the judgment below was affirmed upon the ground "that the facts, as they appear

of record herein, bring the act of defendant within the true intent and meaning of section 439 of the Penal Code of the State of California," and that "on the facts in this case, said act is not repugnant to any of the provisions of the Constitution of the United States."

*Mr. John E. Parsons* for plaintiff in error.

*Mr. A. B. Browne,* (with whom were *Mr. T. C. Van Ness* and *Mr. A. T. Britton* on the brief,) for defendant in error.

MR. JUSTICE WHITE, after stating the case, delivered the opinion of the court.

The principle that the right of a foreign corporation to engage in business within a State other than that of its creation, depends solely upon the will of such other State, has been long settled, and many phases of its application have been illustrated by the decisions of this court. *Bank of Augusta* v. *Earle,* 13 Pet. 519; *Lafayette Ins. Co.* v. *French,* 18 How. 404; *Society for Savings* v. *Coite,* 6 Wall. 594; *Provident Institution* v. *Massachusetts,* 6 Wall. 611; *Hamilton Co.* v. *Massachusetts,* 6 Wall. 632; *Paul* v. *Virginia,* 8 Wall. 168; *Ducat* v. *Chicago,* 10 Wall. 410; *State Tax on Railway Gross Receipts,* 15 Wall. 284; *Railroad Co.* v. *Peniston,* 18 Wall. 5; *Delaware Railroad Tax Case,* 18 Wall. 206; *State Railroad Tax Cases,* 92 U. S. 575; *Philadelphia & Southern Steamship Co.* v. *Pennsylvania,* 122 U. S. 326; *California* v. *Central Pacific Railroad Co.,* 127 U. S. 1; *Home Insurance Co.* v. *New York,* 134 U. S. 594; *Maine* v. *Grand Trunk Railway,* 142 U. S. 217; *Ashley* v. *Ryan,* 153 U. S. 436, 445.

Whilst there are exceptions to this rule, they embrace only cases where a corporation created by one State rests its right to enter another and to engage in business therein upon the Federal nature of its business. As, for instance, where it has derived its being from an act of Congress, and has become a lawful agency for the performance of governmental or *quasi* governmental functions; or where it is necessarily an instru-

mentality of interstate commerce, or its business constitutes such commerce, and is, therefore, solely within the paramount authority of Congress. In these cases, the exceptional business is protected against interference by state authority. The reasons upon which the exceptions to the general rule are based have been often explained. *Telegraph Co.* v. *Texas*, 105 U. S. 460; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196, 205, 211; *Phila. Steamship Co.* v. *Pennsylvania*, 122 U. S. 326, 342; *McCall* v. *California*, 136 U. S. 104, 110; *Norfolk & Western Railroad* v. *Pennsylvania*, 136 U. S. 114, 118; *Pickard* v. *Pullman Southern Car Co.*, 117 U. S. 34; *Robbins* v. *Shelby County Taxing District*, 120 U. S. 489; *Leloup* v. *Port of Mobile*, 127 U. S. 640; *Asher* v. *Texas*, 128 U. S. 129; *Stoughtenburgh* v. *Hennick*, 129 U. S. 141; *Crutcher* v. *Kentucky*, 141 U. S. 47.

In the case last cited the precedents were fully reviewed, and the governing reasons of the law upon this subject were clearly elucidated.

The contention here is that, inasmuch as the contract was one for marine insurance, it was a matter of interstate commerce, and as such beyond the reach of state authority and included among the exceptions to the general rule. This proposition involves an erroneous conception of what constitutes interstate commerce. That the business of insurance does not generically appertain to such commerce has been settled since the case of *Paul* v. *Virginia*, 8 Wall. 168. See also *Phila. Fire Insurance Co.* v. *New York*, 119 U. S. 110, and authorities there cited.

Whilst it is true that in *Paul* v. *Virginia*, and in most of the cases in which it has been followed, the particular contract under consideration was for insurance against fire, the principle upon which these cases were decided involved the question of whether a contract of insurance, of any kind, constituted interstate commerce. The court in reaching its conclusion upon this question was not concerned with any matter of distinction between marine and fire insurance, but proceeded upon a broad analysis of the nature of interstate commerce and of the relation which insurance contracts generally bear

thereto. Thus in *Paul* v. *Virginia*, the court, speaking through Mr. Justice Field, said: "Issuing a policy of insurance is not a transaction of commerce. The policies are simple contracts of indemnity against loss by fire, entered into between the corporations and the assured, for a consideration paid by the latter. These contracts are not articles of commerce in any proper meaning of the word. They are not subjects of trade and barter, offered in the market as something having an existence and value independent of the parties to them. They are not commodities to be shipped or forwarded from one State to another, and then put up for sale. They are like other personal contracts between parties which are completed by their signature and the transfer of the consideration. Such contracts are not interstate transactions, though the parties may be domiciled in different States. The policies do not take effect — are not executed contracts — until delivered by the agent in Virginia. They are, then, local transactions, and are governed by the local law. They do not constitute a part of the commerce between the States any more than a contract for the purchase and sale of goods in Virginia by a citizen of New York whilst in Virginia would constitute a portion of such commerce." p. 183.

This language was reiterated in the case of the *Phila. Fire Ins. Co.* v. *New York, supra*. In *Crutcher* v. *Kentucky, supra*, the court, in applying the exception to the general rule, held that the State of Kentucky was without power to prevent a corporation engaged in interstate commerce from entering that State and carrying on its business therein, and also pointed out the distinction between the making of contracts of insurance and interstate commerce, or the necessary instrumentalities thereof, as follows: "The case is entirely different from that of foreign corporations seeking to do a business which does not belong to the regulating power of Congress. The insurance business, for example, cannot be carried on in a State by a foreign corporation without complying with all the conditions imposed by the legislation of that State. So with regard to manufacturing corporations, and all other corporations whose business is of a local and domestic nature, which

would include express companies whose business is confined to points and places wholly within the State. The cases to this effect are numerous." p. 59.

It is evident, then, as we have said above, that the attempt to so distinguish between policies of marine insurance and policies of fire insurance, as to reach the deduction that there is a constitutional difference between the business of a corporation issuing policies of one kind and that of a corporation dealing in policies of the other kind, which affects the question of a State's authority to control the business of either, is based upon a fundamental misconception of the nature of the constitutional provision relied upon. It ignores the real distinction upon which the general rule and its exceptions are based, and which consists in the difference between interstate commerce or an instrumentality thereof on the one side and the mere incidents which may attend the carrying on of such commerce on the other. This distinction has always been carefully observed, and is clearly defined by the authorities cited. If the power to regulate interstate commerce applied to all the incidents to which said commerce might give rise and to all contracts which might be made in the course of its transaction, that power would embrace the entire sphere of mercantile activity in any way connected with trade between the States; and would exclude state control over many contracts purely domestic in their nature.

The business of insurance is not commerce. The contract of insurance is not an instrumentality of commerce. The making of such a contract is a mere incident of commercial intercourse, and in this respect there is no difference whatever between insurance against fire and insurance against "the perils of the sea."

The State of California has the power to exclude foreign insurance companies altogether from her territory, whether they were formed for the purpose of doing a fire or a marine business. She has the power, if she allows any such companies to enter her confines, to determine the conditions on which the entry shall be made. And, as a necessary consequence of her possession of these powers, she has the right to

enforce any conditions imposed by her laws as preliminary to the transaction of business within her confines by a foreign corporation, whether the business is to be carried on through officers or through ordinary agents of the company, and she has also the further right to prohibit a citizen from contracting within her jurisdiction with any foreign company which has not acquired the privilege of engaging in business therein, either in his own behalf or through an agent empowered to that end. The power to exclude embraces the power to regulate, to enact and enforce all legislation in regard to things done within the territory of the State which may be directly or incidentally requisite in order to render the enforcement of the conceded power efficacious to the fullest extent, subject always, of course, to the paramount authority of the Constitution of the United States.

In the argument at bar it was admitted that, if the contract is to be considered as made in California, then this case is governed by the foregoing principles, unless the business of a foreign company writing marine insurance is protected by the interstate commerce clause of the Constitution, which, as we have seen, is not the case.

It is claimed, however, that, irrespective of this clause, the conviction here was illegal, first, because the statute is by its terms invalid, in that it undertakes to forbid the procurement of a contract outside of the State; and secondly, because the evidence shows that the contract was in fact entered into without the territory of California. The language of the statute is not fairly open to this construction. It punishes "every person who in this State procures or agrees to procure for a resident of this State any insurance," etc. The words "who in this State" cannot be read out of the law in order to nullify it under the Constitution.

It is urged that the words "every person who agrees to procure for a resident of this State," are inconsistent with the preceding language, "who in this State procures," etc. The argument is this: the act punished is procuring for a resident; in order to procure for another, the procurer must be the agent of such other; hence the contract of insurance was

procured by the agent of the insured, and not by the agent of the foreign company; and inasmuch as the foreign company was not, and under the law could not be, technically, within the State for the purpose of giving its assent to the contract, the insurance must have been procured without the State. The fallacy here is ingenious, but it is easily exposed. The elementary rule is that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality. *Parsons* v. *Bedford,* 3 Pet. 433; *United States* v. *Coombs,* 12 Pet. 72; *Brewer* v. *Blougher,* 14 Pet. 178; *Grenada County* v. *Brogden,* 112 U. S. 261; *Presser* v. *Illinois,* 116 U. S. 252.

The admission that the insurance was procured for the resident from a foreign company, which had no agent in the State, does not exclude the possibility of its having been procured within the State. If it were obtained for the resident by a broker who was himself a resident, this would be a procuring within the State and be covered by the statute.

The business of a broker is to serve as a connecting link between the party who is to be insured and the party who is to do the insuring — to bring about "the meeting of their minds," which is necessary to the consummation of the contract. In the discharge of his business he is the representative of both parties to a certain extent. *How* v. *Union Mut. Life Ins. Co.,* 80 N. Y. 32; *Monitor Mut. Ins. Co.* v. *Young,* 111 Mass. 537; *Hartford Ins. Co.* v. *Reynolds,* 36 Michigan, 502.

Domat thus defines his functions: "The engagement of a broker is like to that of a proxy, a factor, or other agent; but, with this difference, that the broker, being employed by persons who having opposite interests to manage, he is, as it were, agent both for the one and the other to negotiate the commerce and affair in which he concerns himself. Thus, his engagement is twofold, and consists in being faithful to all the parties in the execution of what every one of them entrusts him with. And his power is not to treat, but to explain the intentions of both parties, and to negotiate in such a manner as to put those who employ him in a condition to treat together personally." 1 Domat, bk. 1, tit. 17, § 1, Strahan's trans.

Story says this statement of the functions of a broker is "a full and exact description according to the sense of our law." Story's Agency, 31, note 3, 9th ed.

If the contention of the plaintiff in error were admitted, the established authority of the State to prevent a foreign corporation from carrying on business within its limits, either absolutely or except upon certain conditions, would be destroyed. It would be only necessary for such a corporation to have an understanding with a resident that in the effecting of contracts between itself and other residents of the State, he should be considered the agent of the insured persons, and not of the company. This would make the exercise of a substantial and valuable power by a state government depend not on the actual facts of the transactions over which it lawfully seeks to extend its control, but upon the disposition of a corporation to resort to a mere subterfuge in order to evade obligations properly imposed upon it. Public policy forbids a construction of the law which leads to such a result, unless logically unavoidable.

The facts found here enforce the correctness of these views, and illustrate the evil which the statute was doubtless intended to prevent.

Johnson & Higgins were average adjusters and brokers in New York city. Hooper, the plaintiff, as their agent, had a place of business in San Francisco. As such broker he applied for the insurance to his principals in New York city; the policy came to San Francisco for delivery, and the premium was there paid.

One more contention remains to be noticed. It is said that the right of a citizen to contract for insurance for himself is guaranteed by the Fourteenth Amendment, and that, therefore, he cannot be deprived by the State of the capacity to so contract through an agent. The Fourteenth Amendment, however, does not guarantee the citizen the right to make within his State, either directly or indirectly, a contract, the making whereof is constitutionally forbidden by the State. The proposition that, because a citizen might make such a contract for himself beyond the confines of his State, therefore he

might authorize an agent to violate in his behalf the laws of his State, within her own limits, involves a clear *non sequitur*, and ignores the vital distinction between acts done within and acts done beyond a State's jurisdiction.

*Judgment affirmed.*

Mr. Justice Harlan, with whom concurred Mr. Justice Brewer and Mr. Justice Jackson, dissenting.

Hooper, the plaintiff in error, was the agent at San Francisco of the firm of Johnson & Higgins, average adjusters and insurance brokers, doing business in the city of New York. In the latter capacity that firm procured for its customers, from insurance companies wherever incorporated, insurance on ships, vessels, cargoes, and freights.

C. W. Mott, a resident of California, inquired of Hooper if he could procure a certain amount of insurance on a vessel named the Alliance at a given rate of premium — no particular company being specified by Mott. Hooper communicated with his principals, and the latter telegraphed in reply, "Alliance, four thousand dollars, done in American form," but did not name the company in which the insurance had been placed. Mott was informed of this telegram. Johnson & Higgins procured and forwarded to Hooper a policy of the China Mutual Insurance Company of Boston insuring the Alliance in the above sum. Hooper delivered it to Mott, the latter paying to the former as agent of Johnson & Higgins the amount of the premium. That amount was deposited in bank at San Francisco to the credit of Johnson & Higgins, the latter being notified of the deposit.

On account of what he did, as above stated, Hooper was prosecuted under a statute of California, which provided that "every person who in this State procures or agrees to procure any insurance for a resident of this State from any insurance company not incorporated under the laws of this State, unless such company or its agent has filed the bond required by the laws of this State relative to insurance, is guilty of a misdemeanor." Penal Code, § 649.

The bond referred to is that prescribed by section 623 of the Political Code of California, which makes it the duty of the insurance commissioner to require every company, association, or individual, not incorporated under the laws of California "and proposing to transact insurance business by agent or agents in this State," before commencing such business to file a bond, with sureties, in the penal sum of two thousand dollars, conditioned that the person or firm, agent or officer, named therein, would pay to the treasurer of the county or city and county, in which the principal office of the agency is located, such sum per quarter, payable in advance, for a license to transact an insurance business, or such other license as may be imposed by law, so long as the agency remains in the hands of the person or firm, officer or agent, named as principal in the bond; and that such person or firm, officer or agent, would pay to the State all stamp or other duties on the gross amounts so insured, inclusive of renewals on existing policies, and conform to all the provisions of the revenue and other laws made to govern them.

It is true, as stated in the opinion just delivered, that this court has held that a State may prescribe the conditions upon which the corporations of other States, not engaged in interstate commerce, may do business within its jurisdiction; indeed, may exclude such corporations altogether from its limits. In *Paul* v. *Virginia*, 8 Wall. 178, it was adjudged that a corporation was not a citizen within the meaning of the clause of the Constitution declaring that the citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States, although, for purposes of suit in the courts of the United States, it must be deemed a citizen of the State under whose laws it was created. But no question like the one involved in that case is now presented for decision. There is no question here as to the rights of individual citizens of California and of New York.

Section 623 of the Political Code of California applies only to insurance companies not incorporated under the laws of that State, and "proposing to transact business" within its limits. The statement of the case on appeal shows that

defendant had charge of the business of Johnson & Higgins at San Francisco, as *their* employé and agent, and not otherwise. There is no suggestion in that statement that the China Mutual Insurance Company of Boston proposed to do business in California by agent, nor is it stated that Johnson & Higgins are or ever claimed to be agents of that company, nor that that company ever recognized them as its agents or ever issued to a resident of California any policy of insurance except the one delivered to Johnson & Higgins which that firm obtained and forwarded to Hooper, and which, by the latter was delivered to Mott. This single act of the company cannot be held to prove that it proposed to transact business in that State, or that it contemplated the issuing of any other policy to a resident of California. In *Cooper Manufacturing Co.* v. *Ferguson*, 113 U. S. 727, 734, this court, referring to a statute of Colorado forbidding foreign corporations from doing business there, except upon complying with certain regulations, said that it did not embrace a single or isolated transaction by a foreign corporation. Indeed, the prosecution in the present case manifestly had in mind the difference between a single act of insuring property and "proposing to transact insurance business by agent or agents;" for, as will be seen, the complaint under which Hooper was prosecuted does not allege, and, as I infer, purposely failed to allege, that the company which issued the policy in question proposed to transact business in California. So that we have before us a statute making it a crime to procure or agree to procure, in California, for a resident of that State, a policy of insurance from a foreign corporation which does not propose to do business there by agents, and, so far as appears, has never issued to a resident of California any policy but the one issued to Mott.

In my opinion the statute, in its application to the case now presented, is an illegal interference with the liberty both of Mott and of Hooper, as well as an abridgment of the privileges, not of a foreign corporation, but of individual citizens of other States through whom the policy in question was obtained. Johnson & Higgins are pursuing one of the ordinary callings of life in the city of New York. It is a lawful calling

as much so as that of a merchant, grocer, manufacturer, tailor, or shoemaker.  It cannot properly be characterized as in itself or by the necessary results of the business hurtful to the community.  They have as much right to pursue their calling in California, by agent, as they have to pursue it in New York. Of course, this calling, indeed every calling of life, is subject to the power of the State within whose limits it is pursued, to regulate it in any mode that does not violate the essential rights of liberty and property guaranteed by the Federal Constitution against hostile state action.  If it were conceded that California could require every one acting within its limits as an agent for others, whether insurance brokers, merchants, grocers, manufacturers, tailors, or shoemakers, to take out a license and pay a tax as such agent — such regulations being made applicable, in similar circumstances, to all agents doing business in California — it would not follow that it could absolutely prohibit individual citizens of other States or its own people from conducting there, by agents, an ordinary calling not in itself immoral or dangerous to the public.  The enjoyment upon terms of equality with all others in similar circumstances of the privilege of pursuing an ordinary calling or trade, is an essential part of liberty as guaranteed by the Fourteenth Amendment.  *Powell* v. *Pennsylvania*, 127 U. S. 678, 684.  Among the inalienable rights possessed by American citizens is, as Mr. Justice Field has said, "the right of men to pursue their happiness, by which is meant the right to pursue any lawful business or vocation in any manner not inconsistent with the equal rights of others, which may increase their prosperity or develop their faculties, so as to give to them their highest enjoyment." *Butchers' Union Co.* v. *Crescent City Co.*, 111 U. S. 746, 757, 764.  And, in the same case, Mr. Justice Bradley said: "I hold that the liberty of pursuit — the right to follow any of the ordinary callings of life — is one of the privileges of a citizen of the United States."  So in *Jacob's case*, 98 N. Y. 98, 106: "One may be deprived of his liberty and his constitutional rights thereto violated, without the actual imprisonment or restraint of his person.  Liberty, in its broad sense as understood in this country,

means the right, not only of freedom from actual servitude, imprisonment or restraint, but the right of one to use his faculties in all lawful ways, to live and work where he will, to earn his livelihood in any lawful calling, and to pursue any lawful trade or avocation."

In many States there are individuals or firms whose business it is to negotiate loans for others. Often, if not generally, the money is in the hands of corporations for investment. These corporations may not have agents outside of the State in which they are located. What would be thought of a statute making it a crime for any one in the State which enacted it to procure for one of its residents, and through a firm of brokers in New York, a loan of money from a corporation of another State that did not propose to do business by agent, or elsewhere than at the place of its creation? The State, it may be, could forbid any foreign corporation; whose business it is to invest money for itself and others, from doing business in California, by agent, or could require as a condition of its doing business there, by agent, that the corporation or agent should give such bond with surety as may be prescribed. But it could not be made a crime for one in that State to procure a loan of money for a resident of that State, through individual citizens of another State, although the money should be obtained from a foreign investment company not proposing to transact business by agent in the State where the borrower resides and from which the application to borrow comes. And yet the principle which the court approves in its opinion would seem to justify the contrary view.

Mott, for whom Hooper acted, could not be compelled to restrict his application for insurance to foreign companies doing or proposing to do business in California, and which had filed the bond required by the statute of that State. If he preferred insurance in a company that had no agent in California, he had a right to that preference; and any interference with its free exercise would infringe his liberty. Suppose he had himself applied, by mail, directly to Johnson & Higgins for insurance on his vessel, and that firm had delivered the policy in question to an express company with directions to deliver it

to Mott.   Or, suppose that Mott had made his application, by mail, directly to the company.  · I cannot believe that a statute making his conduct, in either of the cases supposed, a criminal offence, would be sustained as consistent with the constitutional guaranties of liberty.   But, it seems from the opinion of the court, that a State is at liberty to treat one as a criminal for doing for another that which the latter might himself do of right and without becoming a criminal.   In my judgment a State cannot make it a crime for one of its people to obtain, himself or through the agency of individual citizens of another State, insurance upon his property by a foreign corporation that chooses not to enter the former State by its own agents.

The chief vice in the argument of counsel in support of the California statute is found in the assumption that Hooper, as well as his principals, Johnson & Higgins, acted as agents of the insurance company.   That assumption is unwarranted by the facts.   Hooper was the agent of Johnson & Higgins and in that capacity alone acted for Mott.   What he said and did in California was said and done for his principals.   Neither Johnson & Higgins nor Hooper acted as agents for the insurance company.   The transaction in legal effect is the same as it would have been if Mott had himself applied by mail to Johnson & Higgins for insurance, and had received the policy from them by mail or through some one in California to whom it was entrusted by that firm for delivery to him.   If California could forbid Mott himself to obtain, by mail, a policy from a foreign corporation having no agent or representative of its own in California, and make it a crime for him to do so, then the statute in question is not repugnant to the Constitution of the United States.   But in my judgment the power of excluding foreign corporations from doing business within its limits, by agents, cannot be exerted by the State so as to impair or destroy the constitutional rights of its own people or of citizens of other States.   I think the judgment of the court below should be reversed.

MR. JUSTICE BREWER concurs in this opinion.   MR. JUSTICE JACKSON, now absent, participated in the consideration of this case.   This opinion has been submitted to him and he concurs in the views here expressed.