7420

NEW YORK LIFE INSURANCE CO. v. McMASTER, INSUR-
ANCE COMMISSIONER.

TRAVELERS' INSURANCE CO. v. SAME.

MUTUAL LIFE INSURANCE CO. v. SAME.

MUTUAL LIFE INSURANCE CO. v. SAME.

1. CONSTITUTIONAL LAW—DISCRIMINATION—FOREIGN CORPORATIONS—
TAX LICENSES.—The State having the right to discriminate against
foreign corporations, it may impose on certain foreign insurance
companies as a condition precedent to doing business in the State the
payment of the amount of taxes levied under a statute held uncon-
stitutional, and not imposed on other like corporations.

2. IBID.—IBID.—IBID.—IBID.—A foreign insurance company having com-
plied with the provisions of section 1801 of Code of 1902, providing
for the appointment of an agent in the State upon whom process
may be served as a condition precedent to doing business in the
State and doing business in the State, is not thereby brought within
the inhibitions of the State and Federal Constitutions as' to dis-
crimination, but its right to do business within the State expires with
its annual license.

3. FOREIGN CORPORATIONS—LICENSES.—THE ATTORNEY GENERAL has no
power to grant a foreign corporation license to do business in the
State, and he has not undertaken to exercise such power.

Petitions in the original jurisdiction of the Court by the
New York Life Insurance Co., Travelers' Insurance Co.,
Mutual Life Insurance Co., (two cases) for mandamus
against Fitz H. McMaster, as insurance commissioner of
the State of South Carolina.

*Mr. T. Moultrie Mordecai,* for petitioners, cites: *A right
acquired by an administrative or judicial proceeding can-
not be taken away without a hearing:* 211 U. S., 262.
*Power to impose conditions on foreign corporations:* 201
U. S., 293; 91 Fed., 711; 63 Pac., 410; 13 Ill., 554; 91
Ill., 364; 104 Ill., 653; 115 Ind., 257; 29 Kans., 672; 34
So., 368; 13 Nev., 424; 28 Ohio St., 521; 85 Pa., 513;
13 Gratt., 767; 40 S. E., 514; 16 Wis., 136; Beal on For.

Corp., 666. *Rule of equality:* 115 U. S., 321; 134 U. S., 594; 148 U. S., 662; 134 U. S., 232; 142 U. S., 399; 156 U. S., 228; 197 U. S., 61. *Granting license is a new contract:* 77 S. C., 453; 57 S. C., 522.

*Attorney General Lyon and Assistant Attorney General DeBruhl,* cite: *State may exclude foreign corportions:* 202 U. S., 249; 177 U. S., 28; 155 U. S., 652; 178 U. S., 395; 181 U. S., 76. *Conditions for coming in are optional with the corporation:* 202 U. S., 252; 177 U. S., 45. *If the corporation comes in it accepts all requirements, limitations and discriminations:* 177 U. S., 28; 178 U. S., 397; 181 U. S., 76. *Fourteenth amendment of the Federal Constitution cannot apply to petitioner, because it is not within the jurisdiction of the State:* 172 U. S., 260.

January 19, 1910. The opinion of the Court was delivered by

MR. JUSTICE WOODS. In four separate cases above named, the New York Life Insurance Company, Travelers' Insurance Company and Mutual Life Insurance Company seek by mandamus to compel Fitz H. McMaster, insurance commissioner of the State, to issue to them licenses to transact the business of life insurance in the State from 1st April, 1909, to 31st March, 1910.

On hearing the petitions, the Chief Justice made orders in the several causes requiring the insurance commissioner to show cause why he should not be required to issue the licenses, and the causes were heard by the Court on the petitions, the returns and traverses of the returns. While these pleadings are voluminous, they raise no issue of fact which has any significance in the decision of the cases, for the question which is decisive of all others is whether the statute of 4th March, 1909, providing for license fees for insurance companies, is constitutional. As the decision depends on this act, it is necessary to set it out in full:

"An act to provide certain conditions to be imposed upon certain foreign insurance companies and certain other foreign companies for the privilege of entering and doing business in this State:

Section 1. "Be it enacted by the General Assembly of the State of South Carolina, that every foreign insurance company of any class, fire, life, marine, surety, security, guarantee, hail storm, live stock, accident, plate glass and other like insurance companies, and all other like classes of like business not incorporated under the laws of the State of South Carolina, except benevolent institutions operating under the grand lodge system, shall, as a condition for the privilege of entering into and doing business in this State, pay all taxes and perform all duties now or hereafter prescribed by law, and *all such companies which have heretofore done business in this State, and have not for any cause whatsoever paid the State and county taxes provided for by sections 302 and 1809, Code of Laws, 1902, volume I, for the years 1907 and 1908, either or both, or having paid and recovered such taxes by suit or otherwise, shall, in addition to the payment of all State and County taxes now or hereafter required by law, pay the State and county taxes provided for in sections 302 and 1809, Code of Laws, 1902, volume I, which have not heretofore been paid for the year 1907, the year 1908, or for both of said years, and such payment of this tax,* together with all other State and county taxes, and the performance of all duties of any kind whatsoever imposed upon such foreign companies *shall be a condition and part of the terms upon which they are allowed to enter this State, and to do business herein: Provided,* That nothing herein contained shall be construed to affect the right of the corporate authorities of the cities and towns of the State to levy, assess or collect taxes or licenses from said insurance companies for municipal purposes: *Provided,* That nothing contained in this act shall deprive

such foreign companies of any right they may have to test, in any Court established under the laws of this State, which may have jurisdiction, the constitutionality of any act of the legislature imposing duties or burdens upon them."

This Court held in the case of *New York Life Insurance Company* v. *Bradley,* 83 S. C., 418, that the taxes provided for by section 302 and 1809 of Civil Code, were imposed not as a charge or tax for the privilege of doing business in the State, but as a property tax on property not within the State, and that the imposition of the tax was, therefore, unconstitutional, in that it contemplated the taking of property without due process of law. That cause was heard in the Circuit Court in December, 1908, and the decree of the Supreme Court was filed on 28th August, 1909. In the meantime, the statute above quoted was enacted on 4th March, 1909. The licenses of all the petitioners to transact business in this State expired thereafter on 31st March, 1909, and in order for them to do business legally in the State for the year beginning 31st March, 1909, and ending 31st March, 1910, it was necessary for them to comply with the law of the State, and take out a new license thereunder. By reference to the lines we have italicized in the license act of 4th March, 1909, it will be seen that the statute required among other things, the taxes provided for 1907 and 1908 by sections 302 and 1809 of the Civil Code, to be paid by foreign insurance companies as a condition of doing business in the State for the year running from 1st April, 1909, to 31st March, 1910. The petitioners offered to comply with all other requirements of law, but refused to pay to the insurance commissioner for the year 1909-10 the taxes provided by sections 302 and 1809 of the Civil Code.

The constitutional question now made by the petitioners and returns is, whether the law-making branch of the government can require these insurance companies to pay for the privilege of doing business in the State certain taxes, which

had been charged against them for the past years under an unconstitutional statute, but which had not been paid, or had been recovered back after having been paid. It is manifest that in requiring the payment of "taxes provided for in sections 302 and 1809" for the years 1907 and 1908, the meaning and purpose of the General Assembly was to require payment of the *amount* of such taxes; for the face of the act shows that it was passed in contemplation of the contingency that the Court might hold the levy and collection of the tax illegal, because made under an unconstitutional statute. It was to meet this contingency, and to collect the amount which the General Assembly had intended should be paid under the unconstitutional statute that it passed the act now under consideration, to enforce the payment by the exercise of the power vested in it to impose on a foreign corporation any terms it saw fit as a condition of doing business in the State.

The main ground on which the petitioners rest their attack on the statute is that it is discriminatory. That it does discriminate in that it does not impose the same terms on all foreign insurance companies is quite evident. The petitioners have been doing business in this State for many years, and, therefore, would have to pay in addition to the sum exacted of a foreign insurance company entering the State for the first time, a sum equal to the taxes for the years 1907 and 1908, contemplated by sections 302 and 1809 of Civil Code. If, therefore, the fourteenth amendment to the Constitution of the United States, or the like provision of section 5, article 1 of our own Constitution applied, there would then be strong ground for argument against the legality of the exaction. But these constitutional limitations on the power of the General Assembly have no application to laws prescribing the terms on which foreign corporations may enter a State. This was expressly decided in *Pembina Mining Co.* v. *Pennsylvania,* 125 U. S., 181,

where the Court says: "The State is not prohibited from discriminating in the privileges it may grant to foreign corporations as a condition of their doing business or hiring offices within its limits, provided always such discrimination does not interfere with any transaction by such corporations of interstate or foreign commerce. It is not every corporation, lawful in the State of its creation, that other States may be willing to admit within their jurisdiction or consent that it have offices in them; such, for example, as a corporation for lotteries. And even where the business of a foreign corporation is not unlawful in other States, the latter may wish to limit the number of such corporations, or to subject their business to such control as would be in accordance with the policy governing domestic corporations of a similar character. The States may, therefore, require for the admission within their limits of the corporations of other States, or of any number of them, such conditions as they may choose, without acting in conflict with the concluding provision of the first section of the fourteenth amendment." The same principle is restated in *Hooper* v. *California,* 155 U. S., 648, 39 L. Ed., 297, the only limitation on the power of a State to exclude a foreign corporation being thus laid down: "Whilst there are exceptions to this rule, they embrace only cases where a corporation created by one State rests its right to enter another and to engage in business therein upon the Federal nature of its business. As, for instance, where it has derived its being from an act of Congress, and has become a lawful agency for the performance of governmental or *quasi* governmental functions, or where it is necessarily an instrumentality of interstate commerce, or its business constitutes such commerce, and, is, therefore, solely within the paramount authority of Congress. In these cases, the exceptional business is protected against interference by State authority." This Court has recently considered the subject and cited the authorities in *N. Y. Life Ins. Co.* v.

*Bradley,* 83 S. C., 418. If any legal proposition can be regarded established beyond further controversy, by these authorities it is settled that subject to the limitation above expressed by the Supreme Court of the United States, a State may admit or exclude at its will all foreign corporations, and may lay down any conditions of admission, and make the conditions apply to all or to one or to a class; and it is entirely for the lawmaking power to decide upon the reasons for exclusion or for the conditions of admission. The State having a right to discriminate against the petitioners, they can have no relief against such discrimination.

The next position taken by counsel is, that the petitioners were already in the State as corporations when the act in question was passed, and after the expiration of their licenses on 31st March, 1909; and that they were, therefore, within the protection of the provision of the Federal and State Constitution against discrimination. It is not denied that the license to do business in the State is annual and expires on the last day of March of each year; but it is contended that the companies remained in the State, having some sort of an existence therein as corporations entitled to protection against discrimination by reason of the compliance with the following provision of section 1801 of Civil Code: "Before the comptroller general shall issue such license to any agent of any insurance company not incorporated in South Carolina, there shall be filed in his office a certified copy of the charter of the company from which the said agent or attorney has received his appointment, and also a certified copy of the vote or resolution of the trustees or directors of said company appointing him such agent, accompanied by a warrant of appointment under the official seal of the company, and signed by the president and secretary. Such warrant of appointment shall continue valid and irrevocable until another agent or attorney has been substituted, so at all times when any liability remains outstanding there shall be within the State

an agent or attorney, as aforesaid, and shall contain a consent expressed, authorizing process of law to be served on said agent or attorney for all liabilities of every nature incurred in this State by said company, and that such service made on such agent or attorney in the manner acquired by the laws of this State shall be deemed legal and binding on the company in all cases whatsoever, and that every judgment so recovered shall be conclusive evidence of the indebtedness of the company. * * *"

The position is too obviously untenable to require extended discussion. The provision of the law last above quoted has been held constitutional by the highest authority. But the acceptance of the provision by a foreign corporation, as a condition of entering the State, is nothing more than a consent that it will be bound by service of processs on the person designated as its agent or attorney. *Wilson v. Siligman,* 144 U. S., 41. Certainly such consent can confer no right on a foreign corporation to continue business in the State after its license has expired by its express limitation. Indeed, in filing the warrant appointing an agent and thus accepting the terms of the statute, the foreign corporation voluntarily assumes an obligation, but in accepting the conditions of this and other statutes, it acquires no right beyond the right to do business in the State until its license expires.

The argument that the petitioners are protected from discrimination, because they are now legally doing business in the State under the consent of the attorney general, is without any basis in fact; the attorney general is without power to confer such a right in violation of statute, and the record shows that he has never attempted to assert such power. This appears clearly from the terms of the agreement relied on by petitioners, which is as follows:

"It was agreed that during the pendency of mandamus proceedings, which petitioner informed respondent would be

brought to test the constitutionality of the act of March 4, 1909, the respondent would not harass the petitioner with penalty suits or ouster proceedings.

"This was agreed to upon the understanding that the mandamus proceedings should be commenced at once, and a decision obtained, as speedily as possible, from the Supreme Court."

Thus it appears that the petitioners are foreign corporations seeking the aid of this Court to enable them to enter the State and do business therein, without complying with the conditions on which the insurance commissioner is permitted to issue licenses to them; hence the petition for mandamus must be denied.