Justice Scalia,
with whom Justice Thomas joins, and with whom Justice Kennedy joins except as to Part III, concurring in part and concurring in the judgment.
I agree with the Court that petitioner Jeffrey Skilling’s challenge to the impartiality of his jury and to the District Court’s conduct of the voir dire fails. I therefore join Parts I and II of the Court’s opinion. I also agree that the decision upholding Skilling’s conviction for so-called “honest-services fraud” must be reversed, but for a different reason. In my view, the specification in 18 U.S.C. § 1346 (2006 ed.) that “scheme or artifice to defraud” in the mail-fraud and wire-fraud statutes, §§ 1341 and 1343 (2006 ed., Supp. II), includes “a scheme or artifice to deprive another of the intangible right of honest services” is vague, and therefore violates the Due Process Clause of the Fifth Amendment. The Court strikes a pose of judicial humility in proclaiming that our task is “not to destroy the Act . . . but to construe it,” ante, at 407, 177 L. Ed. 2d, at 659 (internal quotation marks omitted). But in transforming the prohibition of “honest-services fraud” into a prohibition of “bribery and kickbacks” it is wielding a power we long ago abjured: the power to define new federal crimes. See United States v. Hudson, 7 Cranch 32, 34, 3 L. Ed. 259 (1812).
I
A criminal statute must clearly define the conduct it proscribes, see Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972). A statute that is unconstitutionally vague cannot be saved by a more precise indictment, see Lanzetta v. New
[561 U.S. 416]
Jersey, 306 U.S. 451, 453, 59 S. Ct. 618, 83 L. Ed. 888 (1939), nor by judicial construction that writes in specific criteria that its text does not contain, see United States v. Reese, 92 U.S. 214, 219-221, 23 L. Ed. 563 (1876). Our cases have described *665 vague statutes as failing “to provide a person of ordinary intelligence fair notice of what is prohibited, or [as being] so standardless that [they] authoriz[e] or encourag[e] seriously discriminatory enforcement.” United States v. Williams, 553 U.S. 285, 304, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008). Here, Skilling argues that § 1346 fails to provide fair notice and encourages arbitrary enforcement because it provides no definition of the right of honest services whose deprivation it prohibits. Brief for Petitioner 38-39, 42-44. In my view Skilling is correct.
The Court maintains that “the intangible right of honest services” means the right not to have one’s fiduciaries accept “bribes or kickbacks.” Its first step in reaching that conclusion is the assertion that the phrase refers to “the doctrine developed” in cases decided by lower federal courts prior to our decision in McNally v. United States, 483 U.S. 350, 107 S. Ct. 2875, 97 L. Ed. 2d 292 (1987). Ante, at 404, 177 L. Ed. 2d, at 657. I do not contest that. I agree that Congress used the novel phrase to adopt the lower-court case law that had been disapproved by McNally— what the Court calls “the pre-McNally honest-services doctrine,” ante, at 407, 177 L. Ed. 2d, at 659. The problem is that that doctrine provides no “ascertainable standard of guilt,” United States v. L. Cohen Grocery Co., 255 U.S. 81, 89, 41 S. Ct. 298, 65 L. Ed. 516 (1921), and certainly is not limited to “bribes or kickbacks.”
Investigation into the meaning of “the pre-McNally honest-services doctrine” might logically begin with McNally itself, which rejected it. That case repudiated the many Court of Appeals holdings that had expanded the meaning of “fraud” in the mail-fraud and wire-fraud statutes beyond deceptive schemes to obtain property. 483 U.S., at 360, 107 S. Ct. 2875, 97 L. Ed. 2d 292. If the repudiated cases stood for a prohibition of “bribery and kickbacks,” one would have expected those words to appear in the opinion’s description of the cases. In fact,
[561 U.S. 417]
they do not. Not at all. Nor did McNally even provide a consistent definition of the pre-existing theory of fraud it rejected. It referred variously to a right of citizens “to have the [State]'s affairs conducted honestly,” id., at 353, 107 S. Ct. 2875, 97 L. Ed. 2d 292, to “honest and impartial government,” id., at 355, 107 S. Ct. 2875, 97 L. Ed. 2d 292, to “good government,” id., at 356, 107 S. Ct. 2875, 97 L. Ed. 2d 292, and “to have public officials perform their duties honestly,” id., at 358, 107 S. Ct. 2875, 97 L. Ed. 2d 292. It described prior case law as holding that “a public official owes a fiduciary duty to the public, and misuse of his office for private gain is a fraud,” id., at 355, 107 S. Ct. 2875, 97 L. Ed. 2d 292.
But the pre-McNally Court of Appeals opinions were not limited to fraud by public officials. Some courts had held that those fiduciaries subject to the “honest services” obligation included private individuals who merely participated in public decisions, see, e.g., United States v. Gray, 790 F.2d 1290, 1295-1296 (CA6 1986) (per curiam) (citing United States v. Margiotta, 688 F.2d 108, 122 (CA2 1982)), and even private employees who had no role in public decisions, see, e.g., United States v. Lemire, 720 F.2d 1327, 1335-1336 (CADC 1983); United States v. Von Barta, 635 F.2d 999, 1007 (CA2 1980). Moreover, “to say that a man is a fiduciary only begins [the] analysis; it gives direction to further inquiry. . . . What obligations does he *666 owe as a fiduciary?” SEC v. Chenery Corp., 318 U.S. 80, 85-86, 63 S. Ct. 454, 87 L. Ed. 626 (1943). None of the “honest services” cases, neither those pertaining to public officials nor those pertaining to private employees, defined the nature and content of the fiduciary duty central to the “fraud” offense.
There was not even universal agreement concerning the source of the fiduciary obligation—whether it must be positive state or federal law, see, e.g., United States v. Rabbitt, 583 F.2d 1014, 1026 (CA8 1978), or merely general principles, such as the “obligations of loyalty and fidelity” that inhere in the “employment relationship,” Lemire, supra, at 1336. The decision McNally reversed had grounded the duty in general (not jurisdiction-specific) trust law, see Gray, supra,
[561 U.S. 418]
at 1294, a corpus juris festooned with various duties. See, e.g., Restatement (Second) of Trusts §§ 169-185 (1976). Another pre-McNally case referred to the general law of agency, United States v. Ballard, 663 F.2d 534, 543, n. 22 (CA5 1981), modified on other grounds by 680 F.2d 352 (1982), which imposes duties quite different from those of a trustee.[1] See Restatement (Second) of Agency §§ 377-398 (1957).
This indeterminacy does not disappear if one assumes that the pre-McNally cases developed a federal, common-law fiduciary duty; the duty remained hopelessly undefined. Some courts described it in astoundingly broad language. Blachly v. United States, 380 F.2d 665 (CA5 1967), loftily declared that “[l]aw puts its imprimatur on the accepted moral standards and condemns conduct which fails to match the ‘reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of members of society.’” Id., at 671 (quoting Gregory v. United States, 253 F.2d 104, 109 (CA5 1958)). Other courts unhelpfully added that any scheme “contrary to public policy” was also condemned by the statute, United States v. Bohonus, 628 F.2d 1167, 1171 (CA9 1980). See also United States v. Mandel, 591 F.2d 1347, 1361 (CA4 1979) (any scheme that is “contrary to public policy and conflicts with accepted standards of moral uprightness, fundamental honesty, fair play and right dealing”). Even opinions that did not indulge in such grandiloquence did not specify the duty at issue beyond loyalty or honesty, see, e.g., Von Barta, supra, at 1005-1006. Moreover, the demands of the duty were said to be greater
[561 U.S. 419]
for public officials than for private employees, see, e.g., Lemire, supra, at 1337, n. 13; Ballard, supra, at 541, n. 17, but in what respects (or by how much) was never made clear.
The indefiniteness of the fiduciary duty is not all. Many courts held that some je-ne-sais-quoi beyond a mere breach of fiduciary duty was needed to establish honest-services fraud. See, e.g., Von Barta, supra, at 1006 (collecting cases); United States v. George, 477 F.2d 508, 512 (CA7 1973). There was, unsurprisingly, some dispute about that, at least in the context of acts by persons owing duties to *667 the public. See United States v. Price, 788 F.2d 234, 237 (CA4 1986). And even among those courts that did require something additional where a public official was involved, there was disagreement as to what the addition should be. For example, in United States v. Bush, 522 F.2d 641 (1975), the Seventh Circuit held that material misrepresentations and active concealment were enough, id., at 647-648. But in Rabbitt, 583 F.2d 1014, the Eighth Circuit held that actual harm to the State was needed, id., at 1026.
Similar disagreements occurred with respect to private employees. Courts disputed whether the defendant must use his fiduciary position for his own gain. Compare Lemire, supra, at 1335 (yes), with United States v. Bronston, 658 F.2d 920, 926 (CA2 1981) (no). One opinion upheld a mail-fraud conviction on the ground that the defendant’s “failure to disclose his receipt of kickbacks and consulting fees from [his employer’s] suppliers resulted in a breach of his fiduciary duties depriving his employer of his loyal and honest services.” United States v. Bryza, 522 F.2d 414, 422 (CA7 1975). Another opinion, however, demanded more than an intentional failure to disclose: “There must be a failure to disclose something which in the knowledge or contemplation of the employee poses an independent business risk to the employer.” Lemire, supra, at 1337. Other courts required that the victim suffer some loss, see, e.g., Ballard, supra, at 541-542—a proposition that, of course, other courts
[561 U.S. 420]
rejected, see, e.g., United States v. Newman, 664 F.2d 12, 20 (CA2 1981); United States v. O’Malley, 535 F.2d 589, 592 (CA10 1976). The Court’s statement today that there was a deprivation of honest services even if “the scheme occasioned a money or property gain for the betrayed party,” ante, at 400, 177 L. Ed. 2d, at 655, is therefore true, except to the extent it is not.
In short, the first step in the Court’s analysis—holding that “the intangible right of honest services” refers to “the honest-services doctrine recognized in Courts of Appeals’ decisions before McNally,” ante, at 404, 177 L. Ed. 2d, at 657—is a step out of the frying pan into the fire. The pre-McNally cases provide no clear indication of what constitutes a denial of the right of honest services. The possibilities range from any action that is contrary to public policy or otherwise immoral, to only the disloyalty of a public official or employee to his principal, to only the secret use of a perpetrator’s position of trust in order to harm whomever he is beholden to. The duty probably did not have to be rooted in state law, but maybe it did. It might have been more demanding in the case of public officials, but perhaps not. At the time § 1346 was enacted there was no settled criterion for choosing among these options, for conclusively settling what was in and what was out.[2]
II
The Court is aware of all this. It knows that adopting by reference “the *668 pre-McNally honest-services doctrine,” ante, at 407, 177 L. Ed. 2d, at 659, is adopting by reference nothing more precise than
[561 U.S. 421]
the referring term itself (“the intangible right of honest services”). Hence the deus ex machina: “[W]e pare that body of precedent down to its core,” ante, at 404, 177 L. Ed. 2d, at 657. Since the honest-services doctrine “had its genesis” in bribery prosecutions, and since several cases and counsel for Skilling referred to bribery and kickback schemes as “core” or “paradigm” or “typical” examples, or “[t]he most obvious form,” of honest-services fraud, ante, at 408, 177 L. Ed. 2d, at 660 (internal quotation marks omitted), and since two cases and counsel for the Government say that they formed the “vast majority,” or “most” or at least “ [t]he bulk” of honest-services cases, ante, at 407-408, 177 L. Ed. 2d, at 659-660 (internal quotation marks omitted), THEREFORE it must be the case that they are all Congress meant by its reference to the honest-services doctrine.
Even if that conclusion followed from its premises, it would not suffice to eliminate the vagueness of the statute. It would solve (perhaps) the indeterminacy of what acts constitute a breach of the “honest services” obligation under the pre-McNally law. But it would not solve the most fundamental indeterminacy: the character of the “fiduciary capacity” to which the bribery and kickback restriction applies. Does it apply only to public officials? Or in addition to private individuals who contract with the public? Or to everyone, including the corporate officer here? The pre-McNally case law does not provide an answer. Thus, even with the bribery and kickback limitation the statute does not answer the question, “What is the criterion of guilt?”
But that is perhaps beside the point, because it is obvious that mere prohibition of bribery and kickbacks was not the intent of the statute. To say that bribery and kickbacks represented “the core” of the doctrine, or that most cases applying the doctrine involved those offenses, is not to say that they are the doctrine. All it proves is that the multifarious versions of the doctrine overlap with regard to those offenses. But the doctrine itself is much more. Among all the pre-McNally smorgasbord offerings of varieties of
[561 U.S. 422]
honest-services fraud, not one is limited to bribery and kickbacks. That is a dish the Court has cooked up all on its own.
Thus, the Court’s claim to “respec[t] the legislature,” ante, at 409, n. 43, 177 L. Ed. 2d, at 660-661 (emphasis deleted), is false. It is entirely clear (as the Court and I agree) that Congress meant to reinstate the body of pre-McNally honest-services law; and entirely clear that that prohibited much more (though precisely what more is uncertain) than bribery and kickbacks. Perhaps it is true that “Congress intended § 1346 to reach at least bribes and kickbacks,” ante, at 408, 177 L. Ed. 2d, at 660. That simply does not mean, as the Court now holds, that “§ 1346 criminalizes only” bribery and kickbacks, ante, at 409, 177 L. Ed. 2d, at 660.
Arriving at that conclusion requires not interpretation but invention. The Court replaces a vague criminal standard that Congress adopted with a more narrow one (included within the vague one) that can pass constitutional muster. I know of no precedent *669 for such “paring down,”[3] and it seems to me clearly beyond judicial power. This is not, as the Court claims, ante, at 406, 177 L. Ed. 2d, at 659, simply a matter of adopting a “limiting construction” in the face of potential unconstitutionality.
[561 U.S. 423]
To do that, our cases have been careful to note, the narrowing construction must be “fairly possible,” Boos v. Barry, 485 U.S. 312, 331, 108 S. Ct. 1157, 99 L. Ed. 2d 333 (1988), “reasonable,” Hooper v. California, 155 U.S. 648, 657, 15 S. Ct. 207, 39 L. Ed. 297 (1895), or not “plainly contrary to the intent of Congress,” Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Constr. Trades Council, 485 U.S. 568, 575, 108 S. Ct. 1392, 99 L. Ed. 2d 645 (1988). As we have seen (and the Court does not contest), no court before McNally concluded that the “deprivation of honest services” meant only the acceptance of bribes or kickbacks. If it were a “fairly possible” or “reasonable” construction, not “contrary to the intent of Congress,” one would think that some court would have adopted it. The Court does not even point to a post-McNally case that reads § 1346 to cover only bribery and kickbacks, and I am aware of none.
The canon of constitutional avoidance, on which the Court so heavily relies, see ante, at 405-406, 177 L. Ed. 2d, at 658-659, states that “when the constitutionality of a statute is assailed, if the statute be reasonably susceptible of two interpretations, by one of which it would be unconstitutional and by the other valid, it is our plain duty to adopt that construction which will save the statute from constitutional infirmity.” United States ex rel. Attorney General v. Delaware & Hudson Co., 213 U.S. 366, 407, 29 S. Ct. 527, 53 L. Ed. 836 (1909); see also United States v. Rumely, 345 U.S. 41, 45, 73 S. Ct. 543, 97 L. Ed. 770 (1953) (describing the canon as decisive “in the choice of fair alternatives”). Here there is no choice to be made between two “fair alternatives.” Until today, no one has thought (and there is no basis for thinking) that the honest-services statute prohibited only bribery and kickbacks.
I certainly agree with the Court that we must, “if we can,” uphold, rather than “condemn,” Congress’s enactments, ante, at 403, 177 L. Ed. 2d, at 656-657. But I do not believe we have the power, in order to uphold an enactment, to rewrite it. Congress enacted the entirety of the pre-McNally honest-services law, the content of which is (to put it mildly) unclear. In prior vagueness cases, we have resisted the temptation to make all things
[561 U.S. 424]
right with the stroke of our *670 pen. See, e.g., Smith v. Goguen, 415 U.S. 566, 575, 94 S. Ct. 1242, 39 L. Ed. 2d 605 (1974). I would show the same restraint today, and reverse Skilling’s conviction on the basis that § 1346 provides no “ascertainable standard” for the conduct it condemns, L. Cohen, 255 U.S., at 89, 41 S. Ct. 298, 65 l. Ed. 2d 516. Instead, the Court today adds to our functions the prescription of criminal law.
Ill
A brief word about the appropriate remedy. As I noted supra, at 416, 177 L. Ed. 2d, at 665, Skilling has argued that § 1346 cannot be constitutionally applied to him because it affords no definition of the right whose deprivation it prohibits. Though this reasoning is categorical, it does not make Skilling’s challenge a “facial” one, in the sense that it seeks invalidation of the statute in all its applications, as opposed to preventing its enforcement against him. I continue to doubt whether “striking down” a statute is ever an appropriate exercise of our Article III power. See Chicago v. Morales, 527 U.S. 41, 77, 119 S. Ct. 1849, 144 L. Ed. 2d 67 (1999) (Scalia, J., dissenting). In the present case, the universality of the infirmity Skilling identifies in § 1346 may mean that if he wins, anyone else prosecuted under the statute will win as well, see Smith, supra, at 576-578, 94 S. Ct. 1242, 39 L. Ed. 2d 605. But Skilling only asks that his conviction be reversed, Brief for Petitioner 57-58, so the remedy he seeks is not facial invalidation.
I would therefore reverse Skilling’s conviction under § 1346 on the ground that it fails to define the conduct it prohibits. The fate of the statute in future prosecutions—obvious from my reasoning in the case—would be a matter for stare decisis.

It is hard to imagine a case that more clearly fits the description of what Chief Justice Waite said could not be done, in a colorful passage oft-cited in our vagueness opinions, United States v. Reese, 92 U.S., at 221, 23 L. Ed. 563:
[561 U.S. 425]
“The question, then, to be determined, is, whether we can introduce words of limitation into a penal statute so as to make it specific, when, as expressed, it is general only.
“It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government. . . .
“To limit this statute in the manner now asked for would be to make a new law, not to enforce an old one. This is no part of our duty.”

. The Court is untroubled by these divisions because “these debates were rare in bribe and kickback cases,’’ in which “[t]he existence of a fiduciary relationship, under any definition of that term, was usually beyond dispute,’’ ante, at 407, n. 41, 177 L. Ed. 2d, at 659. This misses the point. The Courts of Appeals may have consistently found unlawful the acceptance of a bribe or kickback by one or another sort of fiduciary, but they have not consistently described (as the statute does not) any test for who is a fiduciary.

. Courts since § 1346’s enactment have fared no better, reproducing some of the same disputes that predated McNally. See, e.g., Sorich v. United States, 555 U.S. 1204, 1206, 129 S. Ct. 1308, 173 L. Ed. 2d 645 (2009) (Scalia, J., dissenting from denial of certiorari) (collecting cases). We have previously found important to our vagueness analysis “the conflicting results which have arisen from the painstaking attempts of enlightened judges in seeking to carry out [a] statute in cases brought before them.’’ United States v. L. Cohen Grocery Co., 255 U.S. 81, 89, 41 S. Ct. 298, 65 L. Ed. 516 (1921). I am at a loss to explain why the Court barely mentions those conflicts today.

. The only alleged precedent the Court dares to describe is Civil Service Comm’n v. Letter Carriers, 413 U.S. 548, 93 S. Ct. 2880, 37 L. Ed. 2d 796 (1973). That case involved a provision of the Hatch Act incorporating prior adjudications of the Civil Service Commission. We upheld the provision against a vagueness challenge—not, however, by “paring down’’ the adjudications to a more narrow rule that we invented, but by concluding that what they held was not vague. See id., at 571-574, 93 S. Ct. 2880, 37 L. Ed. 2d 796. The string of cases the Court lists, see ante, at 406, n. 40, 177 L. Ed. 2d, at 658-659 (almost none of which addressed claims of vagueness), have nothing to do with “paring down.’’ The one that comes closest, United States v. Thirty-seven Photographs, 402 U.S. 363, 91 S. Ct. 1400, 28 L. Ed. 2d 822 (1971), specified a time limit within which proceedings authorized by statute for the forfeiture of obscene imported materials had to be commenced and completed. That is not much different from “reading in’’ a reasonable-time requirement for obligations undertaken in contracts, and can hardly be described as a rewriting or “paring down’’ of the statute. The Court relied on legislative history anticipating that the proceedings would be prompt, id., at 370-371, 91 S. Ct. 1400, 28 L. Ed. 2d 822, and noted that (unlike here) it was not “decid[ing] issues of policy,’’ id., at 372, 91 S. Ct. 1400, 28 L. Ed. 2d 822.