## NUTTING *v.* MASSACHUSETTS.

ERROR TO THE SUPERIOR COURT OF THE STATE OF MASSACHUSETTS.

No. 32.　Argued November 20, 21, 1901.—Decided January 13, 1902.

The statute of Massachusetts of 1894, c. 522, § 98, imposing a fine on "any person who shall act in any manner in the negotiation or transaction of unlawful insurance with a foreign insurance company not admitted to do business in this Commonwealth," is not contrary to the Constitution of the United States, as applied to an insurance broker who, in Massachusetts, solicits from a resident thereof the business of procuring insurance on his vessel therein, and as agent of a firm in New York, having an office in Massachusetts, secures the authority of such resident to the placing of a contract of insurance for a certain sum in pounds sterling upon the vessel, and transmits an order for that insurance to the New York firm; whereupon that firm, acting according to the usual course of business of the broker, of itself, and of its agents in Liverpool, obtains from an insurance company in London, which has not been admitted to do business in Massachusetts, a policy of insurance for that sum upon the vessel; and the broker afterwards, in Massachusetts, receives that policy from the New York firm, and sends it by mail to the owner of the vessel in Massachusetts.

THIS was an indictment on the statute of Massachusetts of 1894, c. 522, § 98, for negotiating and transacting unlawful insurance with a foreign insurance company not admitted to do business in Massachusetts.

Section 98 of that act is as follows: "Any person who shall assume to act as an insurance agent or insurance broker without license therefor as herein provided, or who shall act in any manner in the negotiation or transaction of unlawful insurance with a foreign insurance company not admitted to do business in this Commonwealth, or who as principal or agent shall violate any provision of this act in regard to the negotiation or effecting of contracts of insurance, shall be punished by fine of not less than one hundred nor more than five hundred dollars for each offence."

The act, in section 3, provides that "it shall be unlawful for any company to make any contract of insurance upon or con-

cerning any property or interests or lives in this Commonwealth, or with any resident thereof, or for any person as insurance agent or insurance broker to make, negotiate, solicit or in any manner aid in the transaction of such insurance, unless and except as authorized under the provisions of this act;" and that "all contracts of insurance on property, lives or interests in this Commonwealth shall be deemed to be made therein." And in sections 77–82 it prescribes the conditions with which foreign insurance companies must comply before they can do business in Massachusetts, requiring each company, among other things, to appoint the insurance commissioner its attorney, upon whom process in any suit against it may be served; to appoint some resident of Massachusetts as its agent; to obtain from the insurance commissioner a certificate that it has complied with the laws of Massachusetts and is authorized to make contracts of insurance; and, if incorporated or associated under the laws of any government other than the United States or one of the States, to deposit with the treasurer of Massachusetts or the financial officer of some other State a sum equal to the capital required of like companies, to be held in trust for the benefit of all the company's policy-holders and creditors in the United States.

At the trial in the Superior Court, the parties agreed upon the following facts: The defendant was a citizen of Massachusetts and a licensed insurance broker in Boston, and at some time prior to November 18, 1898, solicited from one William McKie, a shipbuilder in Boston, and likewise a citizen of Massachusetts, the business of procuring insurance upon a vessel then in process of construction in his Boston shipyard; and, as agent for Johnson & Higgins, average adjusters and insurance brokers, having an office in Boston in charge of the defendant, and their principal place of business in New York, secured the authority of McKie to the placing of a contract of insurance for £4124 upon the vessel. Thereupon the defendant transmitted an order for the insurance to Johnson & Higgins in New York, and they at once wrote to their Liverpool agents, John D. Tyson & Co., to procure the aforesaid insurance. Accordingly, Tyson & Co. procured a policy from the London Lloyds, to be delivered

to Tyson & Co. in Liverpool, dated November 18, 1898, for a year from November 16, 1898, on the aforesaid vessel, for the sum of £4124, the policy running in favor of Johnson & Higgins " on account of whom it may concern, as well in their own name as for and in the name and names of all and every other person or persons to whom the same doth, may or shall appertain." Tyson & Co., at the time of receiving the policy, paid the premiums thereon for account of Johnson & Higgins, and received a commission upon the insurance from Lloyds for themselves and for Johnson & Higgins. Tyson & Co. sent the policy to Johnson & Higgins in New York; they, after endorsing it, forwarded it by mail to the defendant in Boston; and he, on November 18, 1898, sent it by mail to McKie. The policy was procured from the London Lloyds in the usual course of the business of the defendant, of Johnson & Higgins and of Tyson & Co. None of them were agents of the London Lloyds, except in so far as the facts agreed constituted them agents. The London Lloyds were individual insurers, citizens of England, associated as principals in the business of insurance, under and by authority of the government of the United Kingdom of Great Britain and Ireland, and carrying on the business in England on the Lloyds' plan, by which each associate underwriter becomes liable for a proportionate part of the whole amount insured by a policy. The London Lloyds had not complied with any of the requirements imposed by the laws of Massachusetts upon foreign insurance companies, and had not been admitted to do insurance business in the Commonwealth, according to law.

The defendant requested the court to instruct the jury that so much of the Massachusetts statute as purported to make illegal such acts as were done by the defendant was contrary to the Fourteenth Amendment of the Constitution of the United States, and as such was unconstitutional and void. The request was refused; and the court instructed the jury that upon the facts above stated they would be warranted in finding the defendant guilty. To all of this the defendant duly excepted, and being found guilty, his exceptions were overruled by the Supreme Judicial Court of Massachusetts. 175 Mass. 154. He

was thereupon sentenced in the Supreior Court, and sued out this writ of error.

*Mr. J. Hubley Ashton* for plaintiff in error.

*Mr. H. M. Knowlton* for defendant in error.

MR. JUSTICE GRAY, after stating the case as above, delivered the opinion of the court.

A State has the undoubted power to prohibit foreign insurance companies from making contracts of insurance, marine or other, within its limits, except upon such conditions as the State may prescribe, not interfering with interstate commerce. A contract of marine insurance is not an instrumentality of commerce, but a mere incident of commercial intercourse. The State, having the power to impose conditions on the transaction of business by foreign insurance companies within its limits, has the equal right to prohibit the transaction of such business by agents of such companies, or by insurance brokers, who are to some extent the representatives of both parties. *Hooper* v. *California*, 155 U. S. 648; *Allgeyer* v. *Louisiana*, 165 U. S. 578.

The statute of Massachusetts of 1894, c. 522, on which this indictment is founded, besides requiring foreign insurance companies, as conditions precedent to doing business in the State, to appoint agents within the State, and to deposit a certain sum in trust for their policy-holders and creditors, provides, in section 3, that "it shall be unlawful" "for any person as insurance agent or insurance broker to make, negotiate, solicit or in any manner aid in the transaction of" insurance on or concerning any property, interest or lives in Massachusetts, except as authorized by the act; and, in section 98, that any person "who shall act in any manner in the negotiation or transaction of unlawful insurance" (evidently intending insurance declared unlawful by section 3) "with a foreign insurance company not admitted to do business in this Commonwealth," shall be punished by fine.

The acts of negotiation or transaction by the defendant in Massachusetts, admitted in the facts agreed by the parties, are

that he solicited from McKie the business of procuring insurance upon his vessel in Boston, and, as agent of Johnson & Higgins of New York, having an office in Boston, secured the authority of McKie to the placing of a contract of insurance for a certain sum in pounds sterling upon the vessel, and transmitted an order for that insurance to Johnson & Higgins in New York; whereupon they, acting according to the usual course of business of the defendant, of themselves and of their agents in Liverpool, obtained from the London Lloyds, who had not been admitted to do business in Massachusetts, a policy of insurance for that amount on the vessel; and the defendant afterwards, in Massachusetts, received from Johnson & Higgins that policy, and sent it by mail to McKie, which tends to show that the policy obtained from the foreign insurance company was the insurance which he had originally solicited. These facts clearly convict the defendant of negotiating and transacting in Massachusetts unlawful insurance with a foreign insurance company in violation of the statute, if that statute is constitutional.

In *Hooper* v. *California,* 155 U. S. 648, Hooper, the agent in California of the same Johnson & Higgins of New York, obtained from them a policy of marine insurance of a Massachusetts insurance company on a vessel in California, owned by a citizen of California, to whom he delivered the policy in California. It was held that a statute of California, by which Hooper was guilty of procuring insurance for a resident of California from a foreign insurance company which had not given bond as required by the laws of California, was constitutional.

In *Allgeyer* v. *Louisiana,* 165 U. S. 578, the insurance was not obtained through an agent or broker, but by the assured himself; and the point decided was that a statute of a State punishing the owner of property for obtaining insurance thereon in another State was unconstitutional. In that case the decision in *Hooper's case* was expressly recognized and distinguished; and Mr. Justice Peckham, speaking for the court, and repeating the words of Mr. Justice White in *Hooper's case,* observed : " It is said that the right of a citizen to contract for

insurance for himself is guaranteed by the Fourteenth Amendment, and that, therefore, he cannot be deprived by the State of the capacity to so contract through an agent. The Fourteenth Amendment, however, does not guarantee the citizen the right to make within his State, either directly or indirectly, a contract, the making whereof is constitutionally forbidden by the State. The proposition that, because a citizen might make such a contract for himself beyond the confines of his State, therefore he might authorize an agent to violate in his behalf the laws of his State within her own limits, involves a clear *non · sequitur*, and ignores the vital distinction between acts · done within and acts done beyond a State's jurisdiction." 155 U. S. 658, 659; 165 U. S. 587, 588.

As was well said by the Supreme Judicial Court of Massachusetts, " While the legislature cannot impair the freedom of McKie to elect with whom he will contract, it can prevent the foreign insurers from sheltering themselves under his freedom in order to solicit contracts which otherwise he would not have thought of making. It may prohibit not only agents of the insurers, but also brokers, from soliciting or intermeddling in such insurance, and for the same reasons." 175 Mass. 156.

We are of opinion that the case at bar comes within *Hooper* v. *California,* and not within *Allgeyer* v. *Louisiana ;* and that section 98 of the statute of Massachusetts, under which the plaintiff in error has been convicted, is not contrary to the Constitution of the United States.

The effect of the other provision of the Massachusetts statute, declaring that " all contracts of insurance on property, lives or interests in this Commonwealth shall be deemed to be made therein," need not be considered ; because the defendant has been convicted, not of the making of the contract, but of negotiating and transacting that contract in Massachusetts.

*Judgment affirmed.*

MR. JUSTICE HARLAN, dissenting.

In my opinion this case does not differ in principle from *Allgeyer* v. *Louisiana,* 165 U. S. 578; and so thinking I cannot concur in the opinion and judgment in this case.