## GABE WILLIAMS v. STATE.

No. A-400.   Opinion Filed March 7, 1911.

(114 Pac. 624.)

1. **INTOXICATING LIQUORS—Soliciting—Interstate Commerce.**
The provision of the prohibition law (section 4180, Snyder's
Comp. Sts. 1909) which provides that it shall be unlawful for
any person, individual or corporate, to solicit the purchase or
sale of intoxicating liquors in this state is not repugnant to
the provisions of the federal Constitution giving Congress the
power to regulate interstate commerce.

2. **INTOXICATING LIQUORS—Illegal Sale — Evidence.**   It is
charged in the indictment that the defendant did "unlawfully
barter and sell intoxicating liquors."   The undisputed facts are
that. on the request of B., the defendant ordered for B. a barrel
of whisky from the owner, who resided in Missouri, and the
same was there delivered to a common carrier, consigned f. o. b.
to B., in Oklahoma; that the defendant was never in possession
of the whisky, and was not otherwise interested in and derived
no profit whatever from the sale thereof.   Held, that there was
no evidence to support a conviction for the offense charged.

3. **CRIMINAL LAW—Aiders and Abettors.**   There can be no aiders
or abettors where there is no crime.

(Syllabus by the Court.)

*Appeal from Rogers County Court; Archibald Bonds, Judge.*

Gabe Williams was convicted of illegally selling intoxicating
liquors, and appeals.   Reversed.

*E. G. Wilson,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty.
Gen., for the State.

DOYLE, JUDGE.   The plaintiff in error was tried and con-
victed upon an indictment, the charging part of which is as
follows:

"That in said county of Rogers, in the state of Oklahoma, on
the 7th day of October, 1908, one Gabe Williams, then and there
being, did then and there wilfully and unlawfully barter and sell

one barrel of intoxicating liquor, commonly called whisky, to Joe Bridges, contrary," etc.

The facts in this case are undisputed, and show that plaintiff in error and Joe Bridges at the time the offense is alleged to have been committed resided at Catoosa, Rogers county; that Bridges requested the plaintiff in error to order for him a barrel of whisky from E. G. Stafford, at Sparta, Christian county, Mo., where said Stafford held said whisky in a bonded warehouse; that plaintiff in error ordered the whisky to be shipped to Bridges, and the same was shipped by Stafford from the warehouse in Missouri, consigned f. o. b. to Joe Bridges, Catoosa, Okla., and said Bridges there received the same from the St. Louis & San Francisco Railroad; that said Stafford made a report to the government of said sale to Bridges as required by the federal revenue laws; that plaintiff in error had no interest in said whisky, and never was in possession of the same either in Missouri or Oklahoma, and derived no profit whatever from the sale thereof. According to the evidence offered, both on the part of the state and the defendant, plaintiff in error acted as the agent of prosecuting witness in ordering said whisky in question from a nonresident dealer outside of the state of Oklahoma.

Counsel for plaintiff in error contends that:

"Admitting for the sake of argument that the plaintiff in error was the owner of the whisky at the time of this transaction, he unquestionably had the right to sell the same in the state of Missouri, and the delivery thereof to the common carrier in the state of Missouri divested him of all title thereto from the moment of the delivery to such carrier, and the sale was consummated in the state of Missouri, and not in Oklahoma. Or, admitting for the sake of the argument that he was the agent for the seller and as such solicited this order, a law which would render the agent, under the circumstances of this case, liable to punishment would be a restriction upon interstate commerce and therefore void."

As plaintiff in error is not charged with "otherwise furnishing" or with the offense of soliciting the purchase or sale of intoxicating liquor, we deem it unnecessary to consider this question further than to say that we believe that the statute which pro-

hibits soliciting the purchase or sale of intoxicating liquors is not repugnant to the provisions of the federal Constitution, giving Congress the power to regulate interstate commerce. Recent decisions of the Supreme Court of the United States have interpreted the so-called "Wilson act" so as to permit the effective operation of such state legislation. *Pabst Brewing Co. v. Crenshaw,* 198 U. S. 17, 25 Sup. Ct. 552, 49 L. Ed. 925. A statute of South Dakota imposed a license tax upon the business of selling or offering for sale intoxicating liquors by traveling salesmen. Construing this statute in the case of *Delameter v. South Dakota,* 205 U. S. 93, 27 Sup. Ct. 447, 51 L. Ed. 724, it was held that:

"The general power of the states to control and regulate within their borders the business of dealing in or- soliciting orders for the purchase of intoxicating liquors is beyond question."

Mr. Justice White, now Chief Justice, delivering the opinion of the court, in part said:

"It having been thus settled that under the Wilson act a resident of one state had the right to contract for liquors in another state and receive the liquors in the state of his residence for his own use, therefore it is insisted the agent or traveling salesman of a nonresident dealer in intoxicating liquors had the right to go into South Dakota and there carry on the business of soliciting from residents of that state orders for liquor to be consummated by acceptance of the proposals by the nonresident dealer. The premise is sound, but the error lies in the deduction, since it ignores the broad distinction between the want of power of a state to prevent a resident from ordering from another state liquor for his own use and the plenary authority of a state to forbid the carrying on within its borders of the business of soliciting orders for intoxicating liquors situated in another state, even though such orders may only contemplate a contract to result from final acceptance in the state where the liquor is situated. The distinction between the two is not only obvious, but has been foreclosed by a previous decision of this court. That a state may regulate and forbid the making within its borders of insurance contracts with its citizens by foreign insurance companies or their agents is certain. *Hooper v. California,* 155 U. S. 648 [15 Sup. Ct. 207, 39 L. Ed. 297]. But that this power to prohibit does not extend to preventing a citizen of one state from making

a contract of insurance in another state is also settled. *Allgeyer v. Louisiana*, 165 U. S. 578 [17 Sup. Ct. 427, 41 L. Ed. 832]. In *Nutting v. Massachusetts*, 183 U. S. 553 [22 Sup. Ct. 238, 46 L. Ed. 324], the court was called upon to consider these two subjects—that is, the power of the state on the one hand to forbid the making within the state of contracts of insurance with unauthorized insurance companies, and the right of the individual on his own behalf to make a contract with such insurance companies in another state as to property situated within the state of residence. The case was brought to this court to review a conviction of Nutting, a citizen of Massachusetts, for having negotiated insurance with a company not authorized to do business in Massachusetts, contrary to the statutes of that state. Briefly, the facts were that Nutting, an insurance broker, solicited in Massachusetts a contract of insurance on property belonging to McKie situated in that state. The proposal was accepted outside of the state of Massachusetts and the policy also issued outside of the state. The contention of the plaintiff in error was that, as the contract was consummated outside of Massachusetts, the conviction was repugnant to the fourteenth amendment, because the acts done did not fall within the general principle announced in *Hooper v. California, supra,* but were within the ruling in *Allgeyer v. Louisiana.* The conviction was affirmed, not because the contract was consummated in Massachusetts, but upon the ground that the right of an individual to obtain insurance for himself outside of the state of his residence did not sanction the conduct of Nutting, as an insurance broker, in carrying on the business in Massachusetts of soliciting unauthorized insurance. After reviewing the Hooper and Allgeyer decisions and pointing out that there was no conflict between the two cases, the court said [183 U. S. 558, 22 Sup. Ct. 240 (46 L. Ed. 324]): 'As was well said by the Supreme Judicial Court of Massachusetts: "While the Legislature cannot impair the freedom of McKie to elect with whom he will contract, it can prevent the foreign insurers from sheltering themselves under his freedom in order to solicit contracts which otherwise he would not have thought of making. It may prohibit, not only agents of the insurers, but also brokers, from soliciting or intermeddling in such insurance, and for the same reasons." [*Commonwealth v. Nutting*] 175 Mass. 156, 55 N. E. 895.' The ruling thus made is particularly pertinent to the subject

.5  Cr—14

ject of intoxicating liquors and the power of the state in respect thereto. As we have seen, the right of the states to prohibit the sale of liquor within their respective jurisdictions in and by virtue of the regulation of commerce embodied in the Wilson act is absolutely applicable to liquor shipped from one state into another after delivery and before the sale in the original package. It follows that the authority of the states, so far as the sale of intoxicating liquors within their borders is concerned, is just as complete as is their right to regulate within their jurisdiction the making of contracts of insurance. It hence must be that the authority of the states to forbid agents of nonresident liquor dealers from coming within their borders to solicit contracts for the purchase of intoxicating liquors which otherwise the citizens of the state 'would not have thought of making' must be as complete and efficacious as is such authority in relation to contracts of insurance, especially in view of the conceptions of public order and social well-being which it may be assumed lie at the foundation of regulations concerning the traffic in liquor. (3) The contention that the law of South Dakota was a taxing law and not a police regulation, and therefore not within the purview of the Wilson act, is in conflict with the purpose of that law as interpreted by the Supreme Court of South Dakota. *State v. Beuchler,* 10 S. D. 156 [72 N. W. 114]. Besides, the contention is foreclosed by the ruling of this court in *Pabst Brewing Co. v. Crenshaw, supra.*"

The only question here presented for determination is whether under the undisputed facts plaintiff in error did "unlawfully barter and sell intoxicating liquor," as charged in the information. We are of opinion that the foregoing facts do not constitute the crime of selling intoxicating liquor. There can be no question that the prosecuting witness, Joe Bridges, had the right to order, purchase, and contract for intoxicating liquors in another state, and receive said liquor in this state for his own use, and, while plaintiff in error acted as the agent of Bridges in ordering said whisky, it is evident he did not violate the provision of the enforcing act which prohibits the sale of intoxicating liquors. The delivery by Stafford of the barrel of whisky to the common carrier in Missouri to be carried to Catoosa, Okla., and there delivered to Joe Bridges was a delivery to Bridges. Thus said liquor was

purchased and delivered in a place where the sale and delivery was lawful, and it there became the property of Joe Bridges.

This case is clearly distinguished from the case of *Buchanan v. State*, 4 Okla. Cr. 645, 112 Pac. 32, where this court held that:

"The law of agency as applied in civil cases has no application in criminal cases, and no man can escape punishment when he participates in the commission of a crime upon the ground that he simply acted as agent for any party."

Furman, Presiding Judge, delivering the opinion of the court, used the following language:

"When a person acts as the agent for another in purchasing prohibited liquor in Oklahoma, while such purchase is illegal he does not thereby render himself liable to the penalties of the law; but when he goes further and aids and abets the seller by delivering or assisting to deliver such liquor, under section (2045, Snyder's St.) above quoted, he thereby assists in the commission of a crime and renders himself just as amenable to the law as the person who actually made the sale, upon the ground that he has aided and abetted in the commission of a crime."

There can be no aiders or abettors where there is no crime. *State v. Lynch*, 81 Ohio St. 336, 90 N. E. 935, 28 L. R. A. 334; *Vernon v. State*, 161 Ala. 83, 50 South. 57. Under the facts in this case the plaintiff in error did not barter or sell, nor aid or abet an unlawful sale of any unlawful purchase, nor did he deliver or assist to deliver said liquor.

For the reasons stated, the judgment of conviction is reversed and the cause remanded.

FURMAN, Presiding Judge, and ARMSTRONG, Judge, concur.