## CHRYSLER SALES CORPORATION v. SPENCER, Insurance Commissioner of Maine.

## UTTERBACK–GLEASON CO. v. SAME.

(District Court, D. Maine, S. D. December 19, 1925.)

Nos. 881, 882.

**I. Insurance ⬉⟹20—Retail automobile dealer held "agent," who procures risks and receives money for premiums, required to be licensed.**

Where automobile sales corporation contracted for fire and theft insurance on all cars sold, to be effective on retail sale at price which was same, whether insurance was desired or not, in favor of beneficiaries determined by sale, *held*, that contract was agreement for future insurance, and retail dealer, in selling car, also sold insurance, and was "agent," and "procures risk and receives money for premiums," within Rev. St. Me. 1916, c. 53, § 121, as amended by Pub. Laws Me. 1917, c. 25, and was required to be licensed, in view of Rev. St. Me. 1916, c. 53, § 1.

[Ed. Note.—For other definitions, see Words and Phrases, First and, Second Series, Agent.]

**2. Commerce ⬉⟹67—Constitutional law ⬉⟹287 —Insurance statute, requiring insurance agents to be licensed, held valid.**

Rev. St. Me. 1916, c. 53, especially section 121, as amended by Pub. Laws Me. 1917, c. 25, requiring insurance agents to be licensed, as applied to dealers selling automobiles and insurance thereon under open policy issued in Michigan, does not violate due process clause of Const. Amend. 14, and is not void as undertaking to regulate interstate commerce.

**3. Insurance ⬉⟹124—Contract is personal contract between insurer and insured, requiring meeting of minds.**

Contract of insurance is personal contract between insurer and insured, and minds of parties must meet.

**4. Insurance ⬉⟹156(4)—Personal quality of automobile insurance contract held not affected by words "for account of whom it may concern."** ·

Personal quality of contract to insure all cars sold by automobile sales corporation against fire and theft for one year after retail sale *held* not affected by words "for account of whom it may concern"; contract clearly concerning purchaser of car.

In Equity. Separate suits for injunction by the Chrysler Sales Corporation and by the Utterback-Gleason Company against Wilbur D. Spencer, Insurance Commissioner for the State of Maine. Preliminary injunction denied.

Andrews, Nelson & Gardiner, of Augusta, Me. (Wm. Tudor Gardiner, of Augusta, Me., of counsel), for plaintiffs. .

Raymond Fellows, Atty. Gen., and Sanford L. Fogg, Deputy Atty. Gen., of Maine, for defendant.

Under section 266 of the Judicial Code before JOHNSON, Circuit Judge, and PETERS and HALE, District Judges.

HALE, District Judge. In No. 881, the plaintiff, a Michigan corporation, engaged in the business of selling automobiles, known as· Chrysler cars, at wholesale to dealers in Maine and in other states, seeks to enjoin the defendant from bringing any prosecutions or proceedings for the recovery of penalties, or any civil actions, against the plaintiff or any dealers in its cars, such dealers acting under the terms of certain alleged contracts of insurance between plaintiff and Palmetto Fire Insurance Company, and from interfering with plaintiff's business in Maine, and from declaring or publishing any statement that plaintiff, or any one of its dealers in Maine, is violating any law of the state of Maine, regulating insurance business in Maine.

In No. 882, the Utterback-Gleason Company, a Maine corporation, a dealer in Chrysler cars, and representing all dealers in Chrysler cars similarly situated in Maine, prays for a similar injunction against the defendant.

The plaintiffs· in both cases aver that the Maine statutes relating to the regulation of insurance in Maine do not apply to the conditions set forth by the plaintiff, and, if they do, they are unconstitutional under the due process clause of the Fourteenth Amendment to the Constitution of the United States, as undertaking to regulate interstate commerce and as impairing freedom of contract. The case is heard by a court

constituted under section 266 of the Judicial Code (Comp. St. § 1243).

[1] In No. 881 the bill in equity alleges:

That the Chrysler Sales Corporation is a Michigan corporation engaged in buying and selling the entire output of Chrysler cars, now manufactured by a certain company called the Chrysler Corporation, organized in Delaware and having its factories in Michigan. That it sells its automobiles to dealers in Maine and in other states, and in other countries. That such dealers resell the cars to purchasers in the several states and countries; and that thereby they are selling and causing to be shipped articles in interstate commerce. That the articles so sold by the plaintiff are known as Chrysler cars. That they enjoy a favorable reputation with the public and are sold in rapidly increasing numbers. That the plaintiff has met with success and does a large business at great cost. That at present there are more than 3,000 such dealers in the several states selling Chrysler cars, and more than 26 such dealers in Maine, and that the sales of such dealers in Maine during the first half of the year 1925 exceeded $200,000.

That more than 80 per cent. of automobiles sold to the American public are sold under plans whereby the purchasers at retail pay only part of the purchase price when they take delivery of the cars, and are given credit for the balance, made payable in installments. That it is the practice of dealers, who are not generally persons of large means, to assure themselves, before selling the cars on time, of the services of some banking or finance company, which agrees to purchase from them or to discount notes for them. Such finance companies are obliged to maintain organization to collect the payments for the cars, and to watch that such cars are not disposed of before they are paid for. Such companies always require that insurance against the perils of fire and theft be required in respect to the cars which they finance. That the charges for such financing, together with the cost of insurance and the interest on the unpaid balance of the purchase price, have always been paid by the retail purchasers of cars sold on time payment plan. That such charges have not been uniform, and, have generally been high, and that by all such charges the price paid by the ultimate purchaser of the cars has been increased.

That plaintiff is now seeking to make arrangements to secure a uniform and moderate financing charge on all Chrysler cars, and that, in order to accomplish this, it has found it necessary to provide for uniform insurance protection on all Chrysler cars. That, to effect this, plaintiff is seeking to secure such insurance at a moderate cost by an open contract or policy of insurance, made and to be performed, as it alleges, in Michigan, covering every Chrysler car against fire and theft for one year after date of purchase at retail for an amount not to exceed the factory list price. That by such policy adequate protection for every retail buyer of a Chrysler car may be provided. That uniform insurance is thus arranged, and a moderate and uniform financing charge is made available for all sales of Chrysler cars on the installment plan, and that thereby the value of the Chrysler product is increased and a substantial saving is made. That by such insurance automatic protection for every retail buyer of the Chrysler cars, and for any other parties having an interest therein or lien thereon, can be obtained, and, uniform insurance being thus arranged, a moderate and uniform financing charge may be made available for all sales of Chrysler cars on the installment plan, and thereby the value of the Chrysler car to the ultimate buyer may be increased and a real and very large saving made.

That, having these facts in view, on or about June 16, 1925, plaintiff duly executed, in the state of Michigan, a contract or policy of insurance with the Palmetto Fire Insurance Company, a South Carolina corporation, licensed to conduct business in Michigan and having a general agency there, but not licensed to do business in Maine and not maintaining any agency in Maine. That this contract, made with the Palmetto, was to be performed in the state of Michigan, and that the Palmetto undertook to insure all Chrysler automobiles sold in the United States at retail, during the term of the policy, against fire and theft for one year from the date of sale, the insurance being granted pursuant to the terms of the contract of insurance. That the original contract has been amended, and a copy of the policy now in use is made a part of the bill. It is called an open policy. Its term is for one year from July 1, 1925, covering against loss by fire or theft all Chrysler cars sold in the United States during the policy year. Under its terms the insurer is to issue a certificate in the name of the plaintiff for the account of whom it may concern whenever a car is reported sold at retail. The form of the certificate is made part of the bill. The policy is to provide that omis-

sion to report the sale of a car or to issue a certificate in respect thereto shall not prevent the retail buyer of the car from being protected under the policy.

The bill alleges that only the plaintiff pays, or is liable to pay, to the insurance company the premium of the policy; that the premium is paid in Michigan and that the policy is kept in Michigan, and certificates are mailed by the insurance company from Michigan to the retail purchaser; that, when the retail sale of a car is made, the purchaser is protected by the Michigan contract of insurance; that, whether the car is sold for cash or on time, the price is the same, except for a charge of 8 per cent. on any unpaid balance, if the car is sold on time; that no purchaser can obtain his car at a less price, whether or not he desires the protection of such insurance; that, if cash purchasers desire other insurance, such insurance shall be merely excess insurance. When a sale is made, the retail dealer reports to the Sales Company the name of the purchaser, the date of the sale, motor number, style, and all necessary details, and plaintiff notifies the agent of the insurance company in Michigan, who mails the certificate of insurance from his office in Detroit to the purchaser, and counterparts of it to others who to his knowledge may have an interest in the car.

Plaintiff says that it is now, as aforesaid, selling large numbers of its cars in Maine to retail purchasers on the above general plan, and it complains that the defendant, acting as insurance commissioner of the state, has announced to the public that, so far as insurance in the name of purchasers is effected, such sales of Chrysler cars are contrary to the laws of the state of Maine, and that the Chrysler dealer, in so selling cars in Maine, is violating certain statutes of Maine; and it complains further that defendant is threatening to procure the arrest of dealers in Chrysler cars who are selling cars in Maine under the arrangement by which insurance is effected on the same. The plaintiffs in both cases assert that the dealers are in no sense agents within the meaning of the Revised Statutes of Maine; that they take no part in placing the contract of insurance; that the dealer cannot separate the premium from the cost of the car; that, if the Maine statutes brought in question are properly construed, they have no application, and, if construed to apply, they are violating the federal Constitution.

Section 121 of chapter 53 of the Revised Statutes of Maine, as amended by section 1,

chapter 25, of the Public Laws of Maine for 1917, is as follows:

"Sec. 121. *Penalty for Soliciting Applications, Without License, Increased.* The insurance commissioner may issue a license to any person to act as an agent of a domestic insurance company, upon his filing with the commissioner a certificate from the company or association, or its authorized agent, empowering him so to act; and to any resident of the state to act as an agent of any foreign insurance company, which has received a license to do business in the state as provided in section one hundred and five or section one hundred and fifty, upon his filing such certificate. Such license shall continue until the first day of the next July. If any person solicits, receives or forwards any risk or application for insurance to any company, without first receiving such license, or fraudulently assumes to be an agent and thus procures risks and receives money for premiums, he shall be punished by a fine not exceeding two hundred dollars, or imprisonment not exceeding sixty days, for each offense; but any policy issued on such application binds the company if otherwise valid. Agents of duly authorized insurance companies may place risks with agents of other duly authorized companies when necessary for the adequate insurance of property, persons or interests. An insurance agent shall be personally liable on all contracts of insurance unlawfully made by or through him, directly or indirectly, for or in behalf of any company not authorized to do business in the state. Nothing herein contained shall require a duly licensed insurance agent or broker to obtain any license for an employee doing only clerical office work in the office of said agent or broker."

Plaintiffs say that no one of the provisions and inhibitions of this statute applies to any of the acts of the Sales Corporation or its 26 dealers—or more—in Maine. It contends that its contract is a contract of insurance, made and completed in Michigan and requiring no act to be done in Maine to effect its completion; that it takes effect upon a sale of a car at retail; and that, when so sold, the insurance becomes automatically effected, by virtue of the contract. We cannot sustain this contention. The Michigan contract appears to us not to be a completed insurance contract, but an agreement for future insurance. By its terms, the insurance does not become effective until the car is purchased in Maine from the dealer. The purchaser, when he

becomes "assured," accepts the insurance and affirmatively states and warrants certain things in the contract to be "warranted by the assured" to be true. He thereby makes certain distinct and affirmative agreements, which become a part of his contract. If he purchased upon the deferred payment plan he arranges with the dealer for some one to finance the payments; and this financial agent becomes a beneficiary. Finally a certificate, the evidence of insurance, is mailed to the purchaser in Maine. In that certificate the purchaser, who has become the insured, "agrees that its terms embody all agreements then existing between himself and the company." The local dealer, we think, when he solicits the sale of the car, solicits also the incidental insurance provided for by the Michigan contract. He selects the beneficiaries; he notifies the Sales Company in Michigan by mail of details essential to the completion of the insurance contract; his acts, together with those of the purchaser, bring the contract into actual existence; and these acts occur in Maine. There is no such meeting of minds as gives life to the contract until the purchaser accepts the car and the insurance from the retail dealer in Maine.

In our opinion, the question is not affected by the fact that the acceptance of the contract is obviously intended to be forced upon the purchaser, the assured, by the fact that the first year's insurance is already paid, regardless of whether the purchaser desires the insurance or not.

It is true that the dealer, who is himself the owner of the cars, does not hold himself out affirmatively and formally to be an insurance agent. He is not thinking much about insurance. He is bent on selling his cars. When he sells a car, he is clearly making himself an instrument for effecting the insurance of it, although such insurance is incidental and deemed by him to be of little consequence. He effects this insurance in behalf of the Palmetto Company, and he has authority to so effect it. When he reports the sale to the Sales Company at Detroit, giving the name of the purchaser, the date of the sale, the motor number, the style of the car, and all elements required in order to issue an ordinary insurance policy, and upon which certificate is actually issued, he seems to us to be giving the necessary information for effecting the insurance. In giving such information he is clearly acting for the insurance company. Within the meaning of the statute we think he "assumes to be an agent" and "procures

risks and receives money for premiums," even though such premiums are submerged in the term "delivery charges" and other expressions.

It is contended by the learned counsel for the plaintiffs that the Palmetto Company, a South Carolinan corporation, had an undoubted right to make a contract of insurance with a citizen of Maine; that the case is ruled by Allgeyer v. Louisiana, 165 U. S. 578, 587, 17 S. Ct. 427, 41 L. Ed. 832, in which case the point decided was that a statute of a state, punishing the owner of property for obtaining insurance thereon in another state, was unconstitutional. The insurance in that case was not procured by an agent in the state of the assured.

In Hooper v. California, 155 U. S. 648, 15 S. Ct. 207, 39 L. Ed. 297, the court decided that a statute of California, by which Hooper was guilty of procuring insurance for a resident of California from a foreign insurance company, which had not given bond as required by the laws of California, was constitutional. The court upheld the principle that the right of a foreign corporation to engage in business within a state other than that of its creation depends solely upon the will of such other state, and illustrated that principle by a long line of decisions. The court decided that the business of insurance is not commerce; that a contract of insurance is not an instrumentality of commerce; the making of such a contract is a mere incident of commercial intercourse. The court held that the state of California has the power to exclude foreign insurance companies from its territory, or, if it allows such companies to enter the state, to determine the conditions under which the entry is to be made, and to regulate and enforce all legislation in regard to things done within the territory of the state which may be directly or incidentally requisite in order to render the enforcement of the conceded power efficacious, subject always to the paramount authority of the Constitution of the United States. In Allgeyer v. Louisiana, supra, the Supreme Court based its decision upon the fact that the contract was made beyond the territory of the state of Louisiana; that nothing whatever was done in that state in relation to the completion of the contract, but that all that was done in that state was the mailing of the letter of notification; and that this was done after the principal contract had been fully effected. It expressly recognized Hooper v. California, supra, and distinguished it. In speaking for the Supreme Court, Mr. Justice

Peckham quoted the language of Mr. Justice White in that case:

"It is said that the right of a citizen to contract for insurance for himself is guaranteed by the Fourteenth Amendment, and that therefore he cannot be deprived by the state of the capacity to so contract through an agent. The Fourteenth Amendment, however, does not guarantee the citizen the right to make within his state, either directly or indirectly, a contract, the making whereof is constitutionally forbidden by the state. The proposition that, because a citizen might make such a contract for himself beyond the confines of his state, therefore he might authorize an agent to violate in his behalf the laws of his state, within her own limits, involves a clear non sequitur, and ignores the vital distinction between acts done within and acts done beyond a state's jurisdiction."

· In Nutting v. Massachusetts, 183 U. S. 553, 556, 22 S. Ct. 238, 239 (46 L. Ed. 324), in speaking for the Supreme Court, Mr. Justice Gray said:

"A state has the undoubted power to prohibit foreign insurance companies from making contracts of insurance, marine or other, within its limits, except upon such conditions as the state may prescribe, not interfering with interstate commerce. A contract of marine insurance is not an instrumentality of commerce, but a mere incident of commercial intercourse. The state, having the power to impose conditions on the transaction of business by foreign insurance companies within its limits, has the equal right to prohibit the transaction of such business by agents of such companies, or by insurance brokers, who are to some extent the representatives of both parties. Hooper v. California, 155 U. S. 648, 15 S. Ct. 207, 39 L. Ed. 297; Allgeyer v. Louisiana, 165 U. S. 578, 17 S. Ct. 427, 41 L. Ed. 832."

[2] We are of the opinion that the instant case is governed by the principles of the cases we have cited, and especially the Hooper Case. We think these cases are decisive of the constitutionality of the statute in question, and of other statutes found in chapter 53 of the Revised Statutes of Maine, undertaking to regulate insurance within the state. Allgeyer v. Louisiana, supra, does not, we think, make a path for the plaintiff to escape from the Maine insurance regulations; for, even though the insurance company may not be prevented from making in Michigan an insurance contract with a Maine citizen, it does not follow that such

company may be permitted to place an agent in Maine to aid it in effecting such insurance, even though such agent is called a "dealer," and even though his main duty is to promote the sale of automobiles. In making sales of $200,000 worth of Chrysler cars in the first six months of 1925, it is clear that the 26 "dealers" of the Sales Company in Maine promoted and effected a substantial volume of insurance business. Such insurance business the Maine statutes had a right to regulate.

Questions similar to those raised in the instant case have been passed upon in certain unreported opinions by courts organized as this court is organized, under section 266 of the Judicial Code. In Palmetto Fire Insurance Company v. James A. Beha, Superintendent of Insurance for the State of New York, 11 F.(2d) ——, the defendant was enjoined from revoking the license of the Palmetto Fire Insurance Company, on the ground, as it appears, that the New York statutes do not prohibit the transactions involved in that case, and that such transactions being valid in Michigan, and not made valid in New York, no legal cause for the cancellation of the license existed. In some of the conclusions of law, as we understand them, we are not in agreement. In Palmetto Insurance Company v. Harry L. Conn, Superintendent of Insurance for the State of Ohio, 9 F.(2d) 202, the court was called upon to enjoin the revocation of the license of the Palmetto Insurance Company to do business in Ohio. It was held that the statute of that state prohibiting an insurance company legally authorized to transact business in Ohio from writing, placing, or causing to be written or placed, insurance upon property situated in that state, except through a legally authorized agent therein who should countersign all policies and enter the payment of the premium upon his record, was valid so far as insurance corporations who had taken out licenses were concerned, and that such a license might properly be revoked if the statute was violated. The precise question there passed upon is not involved in the case before us. Neither of the above cases present the facts found in our record. They are not, of course, of binding force as authorities.

In Chrysler Sales Company v. W. Stanley Smith, Commissioner of Insurance for Wisconsin, 9 F.(2d) 666, the court had before it a case quite similar to the instant case; and we have derived real assistance from the clear opinion of Judge Luse. The statute in question was similar to our stat-

ute; the attempt was to enjoin the insurance commissioner. Judge Luse discusses a contract and plan substantially like the contract and plan in this case. In speaking for the court he says:

"One of the important details of this contract and plan is that the effective date of the insurance is postponed until a car is sold at retail, and until title has passed from, not only complainant, but its distributors and dealers, and only takes effect upon a sale at retail, and covers only the loss sustained by the retail purchaser and lien claimants whose claims grow out of the transaction of retail sale. When so sold, complainant claims, the insurance becomes automatically effective, by virtue of the Michigan contract. Plainly the theory of complainant is that this insurance is something that attaches to and follows an automobile upon its course in the market, as though a part or accessory and that the dealer who sells the car has nothing to do with the insurance item; he merely sells the car with all its equipment including the insurance. But this idea is erroneous, for at least two reasons: (1) The insurance never had effective existence until the sale at retail, by its very terms, or, as it may differently be stated, it is only to be made operative by an act of the retail dealer; and (2) the legal concept of insurance is that in the absence of special circumstances it does not attach to property, but to persons. As said by Story, J., in Carpenter v. Providence Co., 16 Pet. 495, 503 [10 L. Ed. 1044], quoting Lord Hardwicke:

"'The society are to make satisfaction in case of any loss by fire. To whom, or for what loss, are they to make satisfaction? Why, to the person insured, and for the loss he may have sustained; for it cannot properly be called insuring the thing, for there is no possibility of doing it, and therefore must mean insuring the person from damage.'

"A similar thought underlies the decision in Paul v. Virginia, 8 Wall. 168, 19 L. Ed. 357, wherein Justice Field says, referring to insurance contracts:

"'These contracts are not articles of commerce in any proper meaning of the word. They are not subjects of trade and barter offered in the market as something having an existence and value independent of the parties to them. They are not commodities to be shipped or forwarded from one state to another, and then put up for sale.'

"And this thought has withstood numerous assaults, as is indicated in N. Y. Life Ins. Co. v. Deer Lodge County, 231 U. S. 495, 34 S. Ct. 167, 58 L. Ed. 332. And so we conclude that the insurance feature of the sales of Chrysler cars in Wisconsin may not be treated as an appendage or bit of equipment of small relative cost, which passes with the transfer of the car, but must be approached as a contract between persons, the insurer and the insured; and in so far as an insurance results it must be viewed as a thing apart and distinct from the cars sold."

We have quoted quite fully from the opinion in the Wisconsin case, because much of its language is apt and fitting to the record in the case at bar.

[3] Judge Luse has shown that a contract of insurance is a personal contract between the insurer and the insured, and that the minds of both insurer and insured must meet in order to effect such insurance. The statute of Maine defining an insurance contract is illustrative of this point. Under chapter 53, section 1, of the Revised Statutes of Maine, a contract of insurance—life insurance being excepted—is "an agreement by which one party for a consideration promises to pay money or its equivalent, or to do some act of value to the assured, upon the destruction or injury of something in which the other party has an interest." And it is further provided that such insurance business, involving the use of such contracts, shall be carried on only by duly incorporated insurance companies, who have complied with the Maine regulations in regard to insurance.

[4] We have already held that the Michigan contract is not an insurance contract in præsenti, but is an agreement that insurance will be effected in future on the sale of a car. This element of personality becomes important, in view of the fact that the Michigan contract is in favor of "Chrysler Sales Corporation and/or for account of whom it may concern." But the personal quality of the contract is not affected by the words "for account of whom it may concern." The leading case upon this class of policy is Hooper v. Robinson, 98 U. S. 528, 536 [25 L. Ed. 219]. In speaking for the Supreme Court, Mr. Justice Swayne said:

"A policy like the one here in question, in the name of a specified party, 'on account of whom it may concern,' or with other equivalent terms, will be applied to the interest of the persons for whom it was in-

tended by the person who ordered it, provid-ed the latter had the requisite authority from the former, or they subsequently adopted it. 1 Phillips, Ins. § 383."

Hagan v. Scottish Insurance Co., 186 U. S. 423, 430, 22 S. Ct. 862, 865, 46 L. Ed. 1229, is also a leading case. In the latter case, also, Phillips on Insurance is cited:

"Sec. 385. The rule that an insurance 'for whom it may concern' will avail in behalf of the party for whom it is intended does not mean that any specific individual must be intended. * * * But he may intend it for whatever party shall prove to have an insurable interest in the specified subject, in which case it will be applicable to the interest of any person subsequently ascertained to have such an insurable interest, who adopts the insurance."

"Sec. 388. One may become a party to the insurance effected in his behalf, in terms applicable to his interest, without any previous authority from him, by adopting it, either before or after a loss has taken place and is known to him, though the loss may have happened before the insurance was made."

Open policies of this character have been most frequently found in maritime cases. A ship sails from sea to sea, and in many cases is for years away from its home port. In the meantime its owners are changing, and, in case of loss, it often becomes difficult to trace the ownership. Courts have said that the contract may be made applicable to the interest of any person ascertained to have an insurable interest, who "adopts" the insurance, even though such "adoption" is after the loss.

In the cases which we have cited upon that point the insurance was on a specific ship in one case, and on a specific cargo in the other; the thing to which the insurance attached was, therefore, known when the blank policy was made, and the question was: Who had the insurable interest at the time of loss? In the case at bar there is no specific thing to which the insurance can attach until the "dealer" sells a car to a purchaser, and the purchaser accepts the car, with the insurance, and thereby becomes a party to the contract of insurance. There is, therefore, in the instant case, no question of the purchaser's insurable interest, and no necessity of any further "adoption" of the contract. The contract of insurance clearly "concerns" the purchaser of the car.

On the whole, we are of the opinion that the plaintiffs have not presented a case for an injunction against the defendant.

In view of our having passed upon the contract itself, which constitutes the vitals of the controversy, it is not necessary to discuss the question of jurisdiction. Nor is there any occasion for considering other Maine statutes alleged to have been violated.

The motion for a preliminary injunction is denied.