**FIREMEN'S INS. CO. OF NEWARK, N. J., v. BEHA, State Superintendent of Insurance of New York.**

District Court, S. D. New York.  July 5, 1928.

540

John W. Davis, of New York City, for plaintiff.

Henry S. Manley, of Falconer, N. Y., for defendant.

L. HAND, Circuit Judge (after stating the facts as above). The altogether local question raised by this bill is properly before this court in any event, because of the diversity of citizenship, but the convocation of three judges to consider the cause depends upon its constitutional aspect. Oklahoma Natural Gas Co. v. Russell, 261 U. S. 290, 43 S. Ct. 353, 67 L. Ed. 659; Prendergast v. N. Y. Tel. Co., 262 U. S. 43, 43 S. Ct. 466, 67 L. Ed. 853. However, unless the constitutional questions raised be colorable or fraudulent, our jurisdiction as a statutory court extends to the local question, even though we do not have to decide it. Penn Mutual Life Ins. Co. v. Austin, 168 U. S. 685, 695, 18 S. Ct. 223, 42 L. Ed. 626; Siler v. L. & N. R. Co., 213 U. S. 175, 191, 29 S. Ct. 451, 53 L. Ed. 753; Greene v. Louisville, etc., R. Co., 244 U. S. 499, 508, 37 S. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88; Lincoln Gas Co. v. Lincoln, 250 U. S. 257, 264, 39 S. Ct. 454, 63 L. Ed. 968. As we are not prepared to say that the constitutional questions are merely colorable, we see no escape from disposing of the bill in its entirety.

In Palmetto Fire Ins. Co. v. Conn, 272 U. S. 295, 47 S. Ct. 88, 71 L. Ed. 243, we are admonished to accept the construction by state officials of their own statutes in cases of doubt, and that might be enough to dispose of the local aspect of the bill, though it would be a curious result which

should admit the defendant's construction in considering the constitutional part of the bill and remit it for perhaps a severer scrutiny to a single judge. It seems to us that we are therefore bound first to construe the state law, since we must in any event avoid constitutional questions so long as we can.

■ Section 56 of the New York Insurance Law (Consol Laws, c. 28) was intended to require general conformity in investments between foreign and domestic insurance companies. Although the financial position of all companies, domestic and foreign, is subject to the superintendent's examination and discretion, the law certainly imposes upon him some absolute limitations. In saying that the investments of foreign companies must be of the same "general character" as those of domestic, it did not indeed lay upon him a rigid rule; but it did, we think, authorize his insistence upon the same proportion between holdings of stocks in other companies and safer investments. A straight limitation on domestic companies could scarcely have been intended to go along with extreme latitude towards foreign. There could be no conceivable policy, either as regards domestic companies, or policy holders in general, which would dictate such a discrimination. What were thought safe investments for domestic would be prima facie the same for foreign companies, since it can hardly be that the state of New York would rest greater confidence in the judgment of other insurance superintendents than in her own. We start, therefore, with what we regard as a declaration of policy, fortified by the somewhat redundant provision of section 27 affecting alien companies.

The plaintiff insists that, though this be so, section 16 as it now stands proves that just such a discrimination was intended. Subdivision 1 of that section limits the investment of the cash capital of domestic companies, and subdivision 2 enlarges these somewhat in favor of foreign. The enlargement is, however, guarded, and of a kind that avoids any real difference in substance. Except for subdivision 2, we cannot find elsewhere any intent to separate the treatment of foreign and domestic companies, except subdivision 11. That, however, like subdivision 2, was a special privilege accorded certain foreign companies. So far as it shows anything, the section as a whole indicates a disposition consonant with the policy declared in section 56. The joint purpose of both appears to be to define the investments of domestic companies, and to rely upon the general section to insure conformity by foreign companies, except for any differences which may be expressed.

■ The case, outside of constitutional considerations, therefore turns upon what is required of domestic companies. The plaintiff says that the phrase "surplus funds," in the second sentence of subdivision 4 (section 16) means all the assets after deducting the share capital of the company and its deposit with the defendant. This is the meaning of the phrase "the residue of the capital and the surplus money and funds," as used in subdivision 3, and we acknowledge the force of the verbal argument, reinforced as it is by the phrase with which subdivision 4 begins, "No such funds." However, "surplus," at least if taken alone, would under sound accountants' practice mean what was left after deducting, not only capital, but liabilities, and a part, at any rate, of the unearned premiums. A part, though not the whole, of such premiums, was regarded as liability in People ex rel. M. F. Ins. Co. v. Board of Commissioners, 76 N. Y. 64, for tax purposes, and section 117 treats all unearned premiums as liabilities, when dividends are to be declared. Certainly it does much violence to the term to limit deductions to capital alone, excluding not only contingent liabilities under outstanding policies, some of which are sure to become absolute, but even sustained losses as well.

We agree that "surplus funds" is more equivocal than "surplus," and that the matter is not demonstrable either way; but the history of the provision, together with the defendant's construction of it, answer any doubts we might have. Until 1923 the prohibition had been absolute against fire insurance companies, and it was in that year (Laws 1923, c. 606) extended only so far as to allow them to invest in the shares of other companies, if there remained of their true surplus, after deducting such investments, 50 per cent. of their capital. This was a curious provision, and might in some cases be more liberal than the defendant's construction of the act of 1925 (Laws 1925, c. 202); but to suppose that the Legislature meant in one step to pass from it to a permission to all companies to invest half their assets—after deducting capital—in the business of other companies subject to the same risks as themselves appears to us extremely unlikely. Despite its context, we prefer to read "surplus funds" as comprising only what is left after deducting capital, liabilities, and unearned premiums, or at least so much of these as established actuarial ex-

perience would show to be reasonably sure to become absolute.

Thus we conclude that the defendant has not been shown to have misunderstood the statute, and the constitutional questions must be answered. The first is that the defendant has applied the law unequally, singling out the plaintiff alone of foreign companies as subject to his ruling. Ex parte Virginia, 100 U. S. 339, 25 L. Ed. 676; Neal v. Delaware, 103 U. S. 370, 397, 26 L. Ed. 567; Home T. & T. Co. v. Los Angeles, 227 U. S. 278, 33 S. Ct. 312, 57 L. Ed. 510; Zucht v. King, 260 U. S. 174, 177, 43 S. Ct. 24, 67 L. Ed. 194. The bill might perhaps have supported such proof, if it had been offered; but it was not. In any event, such an allegation, if disputed at all, could hardly be the basis for a temporary injunction.

The second constitutional ground is that the statute, if it requires, as a condition upon the grant of the plaintiff's license, that it conform its investments in New Jersey to the provisions of the New York law respecting domestic corporations, attempts to control its operations outside New York, and thus to exercise an extraterritorial power. If so, then any other New York statute which subjected foreign insurance companies to the same regulations as domestic in respect of their solvency would be unconstitutional, unless it could be complied with by conduct taking place only in New York, which it seldom could. For example, a state might not prescribe the necessary proportion between the assets and liabilities of a foreign insurance company, or the amount of its cash capital, as a condition to its doing business within its borders.

The authority for so extraordinary a proposition is thought to be found in cases like Western Union Tel. Co. v. Kansas, 216 U. S. 1, 30 S. Ct. 190, 54 L. Ed. 355, in which a state statute levied a tax upon a foreign corporation, based upon the value of its property elsewhere, and in cases like N. Y. Life Ins. Co. v. Head, 234 U. S. 149, 34 S. Ct. 879, 58 L. Ed. 1259, and Ætna Life Ins. Co. v. Dunken, 266 U. S. 389, 45 S. Ct. 129, 69 L. Ed. 342, in which local statutes prescribed the effect of contracts made beyond their borders. A similar instance is Fidelity & Deposit Co. v. Tafoya, 270 U. S. 426, 46 S. Ct. 331, 70 L. Ed. 664, in which the company was forbidden to employ nonresident agents to underwrite policies covering risks within the states. The doctrine that a state's power to exclude foreign corporations is limited to constitutional conditions is indeed well settled, but its extension to such a case as this would not only result absurdly, but would deny its well-recognized authority. Most states compel a foreign insurance company to make some deposit as a condition of doing business, and the necessary securities or funds are seldom already at hand within the state where the new business is to be done. This has been lawful for 60 years. Paul v. Virginia, 8 Wall. 168, 19 L. Ed. 357; Nutting v. Mass., 183 U. S. 553, 22 S. Ct. 238, 46 L. Ed. 324. Were it not, a state would be stripped of power to protect its citizens from the incursions of any irresponsible companies who might choose to prey upon them.

Perhaps the power may be limited by the purpose and the fitness of the measure to accomplish it; but, whether that be true or not, when so limited it is not further circumscribed by the indirect effects of its operation. As we have said, scarcely any condition can be imposed touching the financial stability of a foreign corporation, which will not involve some results elsewhere; it is enough that these be ancillary to the accomplishment of genuinely local purposes connected with the company's prospective business. Otherwise each state could set the standard of security for the rest of the Union, an intolerable limitation upon the autonomy of each community.

The motion for a preliminary injunction is denied, and the stay is dissolved. In view of the allegations in the bill of the defendant's arbitrary discrimination, it cannot be dismissed. Motion to dismiss denied.